UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Regalo International, LLC, and Carlson Pet Products, Incorporated<br><br>Plaintiffs,<br>v.<br><br>Ningbo Black Horse Tourism Products Co., Ltd, Ningbo Kony Metal Products Co., Ltd and John Does Nos. 1-10<br><br>Defendants. | Case No. _____<br><br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiffs Regalo International, LLC, ("Regalo") and Carlson Pet Products, Incorporated ("Carlson") (collectively "Plaintiffs'), by and through their undersigned attorneys, and for their Complaint defendants Ningbo Black Horse Tourism Products, Co., LTD ("Black Horse"), Ningbo Kony Metal Products Co., Ltd ("Kony") and John Doe Defendants 1-10 which are entities associated with, controlled by, or who are acting in active concert with defendant Black Horse including, but not limited to, defendant Kony (collectively "Defendants") allege as follows:

## NATURE OF THE ACTION

1. This is an action for: (1) Defend Trade Secrets Act ("DTSA"); (2) civil conspiracy; (3) breach of contract; and, (4) common law theft of trade secrets; (5) fraudulent inducement; and (5) trademark infringement under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and common law stemming from Defendants' wholesale theft and use of Plaintiffs' valuable trade secrets and intellectual property rights.

2. On or about January 15, 2016, defendant Black Horse entered into a Non-Disclosure and Confidentiality Agreement with plaintiff Regalo. The contract was executed by Biao Lin (a/k/a "Bill"). A copy of that agreement is attached hereto as Exhibit A and incorporated by reference as if fully set forth herein.

3. On or about January 15, 2016, defendant Black Horse also entered into a Non-Disclosure and Confidentiality Agreement with plaintiff Carlson. Bill also executed this contract on behalf of defendant Black Horse. A copy of that agreement is attached hereto as Exhibit B and incorporated by reference as if fully set forth herein.

4. The agreements attached as Exhibit A and Exhibit B are virtually identical and will be referred to herein as collectively "Agreements."

5. In addition to information disclosed pursuant to the Agreements, Plaintiffs provided defendant Black Horse with substantial trade secrets and other know-how.

6. Defendants Black Horse and Kony, their officers and directors, and entities acting in conjunction therewith have stolen and are using Plaintiffs' valuable trade secrets.

7. Accordingly, Plaintiffs bring this action for violation of the Defend Trade Secrets Act, civil conspiracy, breach of the Non-Disclosure and Confidentiality Agreements and theft of trade secrets.

## THE PARTIES

8. Plaintiff Regalo is a Minnesota Limited Liability Company with a primary place of business located at 3200 Corporate Center Drive, Suite 100, Burnsville, Minnesota 55306.

9. Plaintiff Carlson is a Minnesota corporation with a primary place of business located at 3200 Corporate Center Drive, Suite 100, Burnsville, Minnesota 55306.

10. Defendant Ningbo Black Horse Tourism Products, Co., LTD ("Black Horse") is an organization formed and operated in China.

11. Upon information and belief, defendant Black Horse is owned by Li Xiao Lin who is Bill's wife.

12. Bill is an officer and director of defendant Black Horse and is the individual who executed the attached Agreements on behalf of Black Horse.

13. Upon information and belief, defendant Ningbo Kony Metal Products Co., Ltd ("Kony") is an organization formed and operated in China.

14. Upon information and belief, defendant Kony is also owned by Li Xiao Lin – Bill's wife.

## JURISDICTION AND VENUE

15. This Court has federal subject matter jurisdiction over the DTSA claims pursuant to 18 U.S.C. § 1836(c).

16. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) in that the Plaintiffs are citizens of a State and Defendants are citizens or subjects of a foreign state and the amount in controversy exceeds $75,000, exclusive of interest and costs.

17. This Court has personal jurisdiction over defendant Black Horse in that Black Horse expressly agreed that jurisdiction and venue for any dispute among the parties would be in Minnesota. Agreements at ¶ 5.

18. This Court has personal jurisdiction over Kony because Kony has, and continues to engage in purposeful conduct whose harm directed at and is experienced by Plaintiffs who, as known to Kony, reside in this judicial district. Further, Kony is owned by the same individual that owns defendant Black Horse and is related to Black Horse, acts in concert with Black Horse and Bill and is a co-conspirator with Black Horse.

19. Venue is proper in this judicial district 28 U.S.C. §§ 1391(b) & (c), as well as 28 U.S.C. § 1400(b) in that defendant Black Horse has agreed to venue and has agreed to be subject to jurisdiction in this judicial district. Agreements at ¶ 5.

## FACTS COMMON TO ALL COUNTS

20. In or about 1997, plaintiff Regalo was founded by Mark and Wendy Flannery and remains to this day, a family owned and operated business. Initially, Regalo marketed, sold, and distributed high-quality juvenile products. Since its inception, Regalo's commitment to innovation, quality and affordability has in large part fueled its tremendous growth in the infant, toddler, and juvenile products market including but not limited to baby gates, pet gates, and furniture products.

21. In or about 2008, Plaintiff Carlson was formed to market, distribute, and sell various high-quality pet products.

22. For over twenty-five years, Plaintiffs have grown to be world leaders in the production and distribution of high-quality baby and pet products including the gate and barrier products at issue in this matter.

23. Plaintiffs have invested millions of dollars and substantial resources in the development of their products and establishing their reputation among consumers as having industry-leading gate products of the highest quality, safety, and performance.

24. Plaintiffs' products are designed and produced to meet enhanced safety standards and have been validated by numerous standards organizations, including ASTM International and the Juvenile Products Manufacturers Association.

25. Plaintiffs' ongoing efforts and the innovations resulting therefrom have given rise to countless trade secrets and knowhow related to many novel and unique aspects of its line of products, which are also directed to the novel and unique safety gate features at issue in this case.

26. Plaintiffs offer for sale and sell products with unique designs and features which embody many aspects of Plaintiff's novel trade secrets, and which are fabricated using Plaintiffs' substantial proprietary and confidential information and trade secrets.

27. During that time, Regalo has been extensively engaged in the business of manufacturing and marketing a wide variety of infant and toddler furniture products, including pet gates, safety gates and playpens.

28. Regalo is one of the country's foremost leaders in the juvenile products industry.

29. Regalo and Carlson employ over 200 people at their facilities in Burnsville, Minnesota and their warehouse and distribution center in Dupont, Washington.

30. For years, Plaintiffs have worked with various factories in China to produce their products for sale in the United States.

31. One of those factories was located in Ningbo, China. However, that facility did not have the ability to do the welding required for the production of many of Plaintiffs' products.

32. At the time, Bill was the contractor providing welding services to that factory so that it could complete the fabrication of Plaintiffs' products.

33. At some point, Bill suggested to Plaintiffs' that with their help and support, he could set up a factory for the fabrication of the Plaintiffs' products.

34. Prior to that time, Bill had never built or operated a factory. Nor had Bill ever engaged in the manufacture of any metal products including, but not limited to, the products now at issue in this litigation.

35. In or about the 2014 – 2016 timeframe, Plaintiffs agreed to assist Bill in setting up a factory. Over the next few years, Plaintiffs' team members spent significant time working with Bill and defendant Black Horse in setting up Black Horse's factory and allowing it to manufacture safe and effective products in an efficient and economical manner.

36. Ye Jian Lin (a/k/a "Lucas") (hereafter, "Lucas") was one of Plaintiffs' team members who directly assisted defendant Black Horse and Bill to set up their factory at Plaintiffs' sole cost and expense. To that end, Lucas had spent significant time assisting Black Horse and Bill and providing them with substantial and valuable confidential and proprietary information.

37. In or about early 2016, as part of their close relationship and substantial amount of business, Plaintiffs executed the Agreements with defendant Black Horse and Bill.

38. Prior to and since that time, Plaintiffs have provided defendant Black Horse and Bill with substantial trade secrets up to and including through August 2023.

39. Plaintiffs later learned that in or about the same 2016-time frame when defendant Black Horse and Bill were negotiating the Agreements, and at or about the time Plaintiffs were employing Lucas, Black Horse and Bill were paying Lucas to steal trade secrets and other valuable confidential and proprietary information from Plaintiffs for use by Black Horse, Bill and other entities associated therewith.

40. On information and belief, defendant Black Horse and Bill negotiated and executed the Agreements with no present intention to honor them. Instead, on information and belief, Black Horse and Bill sought to lull Plaintiffs into a false sense of security and to otherwise conceal the fact that Black Horse and Bill were engaging in the wholesale theft of intellectual property from Plaintiffs.

41. Upon Plaintiffs' termination of that employee, the employee then went to work for defendant Black Horse and Bill.

42. In fact, Lucas is the named inventor in United States Patent No. D924,434 ("'434 Patent") which is assigned to Defendant Kony.

43. Prior to his work with Plaintiffs, Lucas had no experience with the gate features which are the subject of the '434 Patent let alone any experience with baby or pet gates in general.

44. The trade secrets and other confidential and proprietary information subject to the Agreements, and otherwise misappropriated or stolen by Lucas on behalf of Black Horse and Bill from Plaintiffs, were not readily known and provided Plaintiffs with a competitive advantage.

45. Those trade secrets included (but were not limited to) substantial elements of the manners and means to fabricate Plaintiffs' products effectively and economically.

46. Recently, Plaintiffs learned the Defendants have wrongfully and illegally manufactured, marketed and sold various products using Plaintiffs' valuable trade secrets which has caused direct harm to Plaintiffs.

47. The Defendants' use of Plaintiffs' trade secrets has caused direct harm to the Plaintiffs.

48. Defendants have wrongfully used Plaintiffs' trade secrets in the manufacture and sale of gate products to Aborder.

49. Defendants have wrongfully used Plaintiffs' trade secrets in the manufacture and sale of products on Amazon.

50. Defendants have wrongfully used Plaintiffs' trade secrets to manufacture and sell products retailed and sold in the United States by Chewy.

51. Defendants have wrongfully used Plaintiffs' trade secrets to manufacture and sell products retailed and sold in the United States by PetSmart.

52. In fact, in addition to including Plaintiffs' valuable trade secrets, products fabricated by Defendants and those in active concert with Defendants sold at PetSmart include elements stamped with Plaintiff Regalo's registered trademark. These products

were obviously fabricated by Defendants, or someone acting on Defendants behalf, using tooling previously provided by Plaintiffs to defendant Black Horse.

## COUNT I
## FEDERAL VIOLATIONS OF
## THE DEFEND TRADE SECRETS ACT

53. Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth herein.

54. By the acts complained of herein, Defendants, either alone or acting in active concert with others, have engaged in acts which constitute federal violations of the Defense of Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.

55. Plaintiffs' products are used in, or intended for use in, interest commerce.

56. Plaintiffs trade secrets, know-how and information constitute a trade secret as defined in 18 U.S.C. § 1839(3) in that it is business, technical, and engineering information.

57. Plaintiffs' trade secrets derive independent economic value, actual or potential from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information consistent with 18 U.S.C. § 1839(3)(B).

58. Plaintiffs engaged in reasonable efforts to maintain the secrecy of their information consistent with 18 U.S.C. § 1836(3)(A).

59. Plaintiffs' trade secrets have significant value.

60. Defendants have misappropriated Plaintiffs' trade secrets without express or implied consent in violation of 18 U.S.C. §1839(5) including, but not limited to, through

their manufacture and sale, either alone or in concert with related entities fabricate and sell various products including, but not limited to, gate and pet products to Aborder, Chewy, PetSmart and Amazon which further constitutes improper means in violation of 18 U.S.C. § 1839(6)(A).

61. Prior to its relationship with Plaintiffs, Defendants had absolutely no experience in operating a facility to manufacture and fabricate various children and pet products including, but not limited to, the products sold directly, or through related entities to Aborder, Chewy, PetSmart and Amazon and as such, could not have readily ascertained through proper means the trade secrets necessary to compete and succeed in these markets.

62. At the time of their efforts, Defendants knew, or had reason to know, that Plaintiffs' methods, processes, materials and information were a trade secret.

63. Through the acts complained of herein, Defendants, either alone or acting in concert through related entities has violated 18 U.S.C. § 1836.

64. Defendants' actions were willful and malicious.

65. Plaintiffs have been substantially harmed by Defendants' misappropriation of Plaintiffs' trade secrets.

66. Plaintiffs will continue to be irreparably harmed unless and until Defendants, and those in active concert with Defendants have been enjoined from using Plaintiffs' valuable property and unless and until this Court orders the seizure of all products which in any way relate to or are derived from Plaintiffs' materials.

67. Defendants Black Horse and Kony have gone to great lengths to conceal their unlawful acts including, but not limited to, creating various shell companies directly related to Defendants including having a common ownership.

68. Defendant Black Horse and Bill wrongfully paid one of Plaintiffs' employees to misappropriate information while employed with Plaintiffs. Upon termination, that employee went to work for Defendant Black Horse and Bill.

## COUNT II
## CIVIL CONSPIRACY

69. Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth herein.

70. This Count is for civil conspiracy pursuant to Minnesota common law.

71. By the acts complained of herein, Defendants have engaged in a concerted action including, but not limited to, fraudulently inducing Plaintiffs' to enter into the Agreements.

72. It was, and remains, the specific intent of the Defendants to achieve an unlawful purpose, including, but not limited to, the theft of Plaintiffs' trade secrets.

73. The Defendants have committed at least one overt act in furtherance of the conspiracy including, but not limited to, the acts described herein.

## COUNT III
## THEFT OF TRADE SECRETS

74. Regalo realleges and incorporates the preceding paragraphs as if fully set forth in this paragraph.

75. This Count is for the theft of trade secrets pursuant to Minnesota Uniform Trade Secrets Act ("MUTSA") and the common law.

76. Over the decades, Plaintiffs have developed information such as patterns, compilations, programs, devices, methods, techniques, or processes.

77. Plaintiffs trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

78. Plaintiffs have made efforts that are reasonable under the circumstances to maintain secrecy.

79. The Defendants, either alone or acting in active concert with others have misappropriated Plaintiffs' trade secrets.

80. Defendants' misappropriation of Plaintiffs' trade secrets was knowing and intentional.

81. Since in or about 2012, Defendants and Plaintiffs have had a confidential relationship with one or both of the Defendants and entities associated with the Defendants and that Plaintiffs' trade secrets were disclosed to one or both of the Defendants under circumstances that imposed a duty on the Defendants to maintain Plaintiffs' trade secrets or limit the use of Plaintiffs' trade secrets.

82. Plaintiffs' have been harmed by Defendants' misappropriation of Plaintiffs' trade secrets.

83. Plaintiffs will continue to be harmed by Defendants' misappropriation of Plaintiffs' trade secrets unless and until Defendants, and those acting in active concert with the Defendants are enjoined by this Court.

## COUNT IV
## BREACH OF CONTRACT

84. Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth in this paragraph.

85. This Count is for breach of contract.

86. This Court may exercise pendent jurisdiction over this Count.

87. Defendant Black Horse, either alone or acting with others including defendant Kony, has been, and continues to fabricate and manufacture children and pet products, including gates, which products were developed in whole or in part based upon Plaintiffs' know-how or other trade secret information.

88. Defendant Black Horse's actions constitute a breach of the Agreements.

89. Defendant Black Horse's conduct has damaged Plaintiffs by causing them lost revenue, attorneys' fees, costs as well as other harm. this Court.

## COUNT V
## FRAUD IN THE INDUCEMENT

90. Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth in this paragraph.

91. This Count is for fraud in the inducement pursuant to Minnesota common law against Defendant Black Horse.

92. This Court may exercise pendent jurisdiction over this Court.

93. Defendant Black Horse made various representations to Plaintiffs including, but not limited to, terms, obligations, covenants and conditions set forth in the Agreements negotiated and executed by Bill on behalf of Black Horse.

94. Defendant Black Horse's representations were false or were otherwise made with no present intention to perform them.

95. Defendant Black Horse's representations pertained to past or then-present facts.

96. Defendant Black Horse's representations were material.

97. The facts misrepresented by defendants Black Horse were susceptible of knowledge.

98. Defendant Black Horse knew that the facts were false or were asserted as if of Black Horse's own knowledge without knowing whether they were true or false.

99. Defendant Black Horse intended to induce Plaintiffs to act or justify them in acting upon these facts.

100. Plaintiffs were induced to act or justified in acting upon defendant Black Horse's representations.

101. Plaintiffs' actions were in reasonable reliance upon defendant Black Horse's misrepresentations.

102. Plaintiffs have suffered damages based upon defendant Black Horse's misrepresentations.

103. Plaintiffs' damages are attributable to defendant Black Horse's misrepresentations and Black Horse's misrepresentations were the proximate cause of Plaintiffs' injuries. Court.

## COUNT VI
## TRADEMARK INFRINGMENT
### (Regalo v. Kony)

104. Plaintiffs reallege and incorporate the preceding paragraphs as if fully set forth in this paragraph.

105. This Count is for trademark infringement on behalf of plaintiff Regalo under Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125 against Defendant Kony.

106. Since 1996, Regalo has used the name and trademark REGALO in connection with safety gate products and in the marketing and sale of the same in interstate commerce. These safety gates have been widely advertised and extensively offered under this name and mark throughout the United States, and their sales have been and are significant. Regalo's name and mark REGALO are displayed prominently on its safety gates and on all product packaging. Regalo has invested a substantial amount of effort and expense in promoting its name and mark and in ensuring the high quality of safety gates provided thereunder

107. Plaintiff Regalo's safety gates sold under the name and mark REGALO are recognized to be of the highest quality

108. As a result of Regalo's substantial advertising and sales under the name and mark REGALO, and the maintenance of premium quality standards relating thereto, and

15

Regalo's substantially exclusive use, the name and mark REGALO have become widely and favorably accepted and recognized by consumers as a unique and distinctive indication of the origin of Regalo's safety gates. The name and mark REGALO has become and is an asset of substantial value as a symbol of Regalo, its high-quality products, its reputation and goodwill

109. On July 7, 1998, the United States Patent and Trademark Office ("USPTO") granted federal trademark registration to Regalo for the mark REGALO for "metal safety gates for babies, infants and children" as Certificate of Registration No. 2,171,783. This registration is in fully force and effect, is owned by Regalo, and has become incontestable under 15 U.S.C. § 1065. Regalo uses the registration symbol ® on its goods and in advertising in association with its trademark.

110. A copy of the REGALO registration is attached hereto as Exhibit C.

111. As noted herein, without any authorization or license from Regalo, defendant Kony has manufactured, imported, offered for sale and sold in interstate commerce baby gate products bearing Regalo's name and trademark REGALO prominently stamped on the adjustment strings found on the product's plastic cap. These products include, but are not limited to, the Top Paw Deluxe Shade Playpen sold on PetSmart. The trademark appearing on Kony's products is identical to or substantially indistinguishable from Regalo's genuine registered trademark.

112. Defendant Kony's gate products are not genuine Regalo products. Regalo did not manufacture, inspect, or package Kony's products, nor did Regalo approve them

for sale or distribution. Nor did Regalo authorize or license the use of its name and trademark on Kony's products.

113. Without plaintiff Regalo's authorization or consent and having knowledge of Regalo's prior rights in the mark REGALO, defendant Kony has knowingly and intentionally misused Regalo's name and mark REGALO.

114. Defendant Kony's use of plaintiff Regalo's name and mark REGALO on or in connection with the manufacture, advertising, distribution, offering for sale, and sale of its spurious gate products is likely to cause confusion, mistake, and deception among the general purchasing public as to the affiliation, connection, or association of Kony with Regalo, or as to the origin, sponsorship, or approval of Kony's products by Regalo.

115. On information and belief, defendant Kony has manufactured and marketed its spurious gate products using the REGALO trademark with the intention of misleading, deceiving consumers into believing that said products are genuine Regalo products.

116. On information and belief, as a direct and proximate result of defendant Kony's trademark infringement, plaintiff Regalo has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Kony has unfairly acquired and will continue to unfairly acquire income, profits, and goodwill.

117. Defendant Kony's acts of infringement will cause further irreparable injury to plaintiff Regalo if Kony is not restrained by this Court from further violation of Regalo's rights. Regalo has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Regalo International, LLC and Carlson Pet Products respectfully pray that judgment be entered in their favor and as against defendant Ningbo Black Horse Tourism Products, Co., Ltd, and defendant Ningbo Kony Metal Products Co., Ltd as follows:

A.   For a finding that Defendants have violated the Defend Trade Secrets Act by and though the acts complained of herein;

B.   For a finding that the Defendants have engaged in civil conspiracy by and through the acts complained of herein;

C.   For a finding that Defendants have violate the Minnesota Uniform Trade Secret Act and the common law by and through the acts complained of herein;

D.   For a finding that Defendant Black Horse has breached the Non-Disclosure and Confidentiality Agreements through the acts complained of herein;

E.   For a finding that Defendant Black Horse has engaged in fraud in the inducement through the acts complained of herein;

F.   For a finding that defendant Kony has committed trademark infringement through the conduct alleged herein;

G.   For an award of damages;

H.   For an award of punitive damages;

I.   For a preliminary and permanent injunction against Defendants and any entity associated with or acting in active concert with Defendants precluding such further

acts of trade secret misappropriation and enjoining the import or sales of any products manufactured in any way using Plaintiffs' trade secrets;

J. For an award of costs, expenses, and disbursements, including any reasonable attorney fees, which may be available; and

K. For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs request a trial by jury on all issues so triable.

**CAMERON LAW OFFICE CHARTERED**

Date: 1/30/25

J. Matthew Berner (#0293167)
5353 Gamble Drive, Suite 300
Minneapolis, Minnesota 55416
Telephone No. (612) 355-7427
Facsimile No. (612) 339-6787
matt@cameronlawoffice.com

and

Frederick A. Tecce
**ALTIMA ADVISORS/ATTORNEYS, LLC**
One Liberty Place – 55th Floor
1650 Market Street
Philadelphia, Pennsylvania 19103
Telephone No. (215) 268-7525
Facsimile No. (215) 268-7526
fred.tecce@altimaadvisors.com

**ATTORNEYS FOR PLAINTIFFS**