# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

Regalo International, LLC et al.

       Plaintiffs,

v.

Ningbo Black Horse Tourism Products
Co., Ltd et al.

       Defendants.

Civil Action No.
0:25-cv-00361-KMM-DLM

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT BLACK HORSE'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.    STATEMENT OF RELEVANT FACTS............................................................2

II.   ARGUMENT.......................................................................................................3

   A. This Court Should Dismiss Plaintiffs' Complaint Under FRCP 12(b)(2) for
      Lack of Personal Jurisdiction over Black Horse................................................3

      1.   Black Horse Did Not Consent Personal Jurisdiction in This Court.............4

      2.   Without the Forum Selection Clause, Plaintiffs Cannot Otherwise Establish
      Personal Jurisdiction Over Black Horse............................................................6

   B. Plaintiffs' Complaint Should Be Dismissed Under FRCP 12(b)(6) for Failure
      to State a Claim. ...............................................................................................11

      1.   Counts I–III Fail to Adequately Plead Trade Secret Misappropriation
      Under the DTSA and MUTSA. .........................................................................11

      2.   Count II Fails to Allege Any Conscious Agreement or Coordinated
      Conduct. .............................................................................................................17

      3.   Count IV Fails to Allege a Single Instance of Breach.............................20

      4.   Count V Should Be Dismissed for Failure to Plead Fraud With
      Particularity Under FRCP 9(b). ........................................................................23

   C. If Any Claim Were to Survive, Plaintiffs' Request for Injunctive Relief
      Should Be Denied..............................................................................................24

III.  CONCLUSION .................................................................................................27

Regalo International, LLC ("Regalo") and Carlson Pet Products, Incorporated ("Carlson") (collectively, "Plaintiffs") brought this action against Ningbo Black Horse Tourism Products Co., Ltd. ("Black Horse") and Ningbo Kony Metal Products Co., Ltd. ("Kony") (collectively, "Defendants"), asserting a total of six Counts. Counts I–V generally allege trade secret misappropriation related to business transactions that occurred entirely outside the United States; while Count VI alleges trademark infringement under the Lanham Act. Only Counts I–V are asserted against Black Horse. Defendant Black Horse hereby moves for dismissal of all counts asserted by Plaintiffs.

The claims should be dismissed for lack of personal jurisdiction. Plaintiffs filed claims in this Court against Black Horse—a Chinese company having no U.S. business or operation—based on allegations that occurred entirely outside the United States. The Complaint does not allege that Black Horse ever contacted Minnesota. The only possible basis for personal jurisdiction over Black Horse in Minnesota is the forum selection clauses within two alleged NDAs—one between Black Horse and Regalo and one between Black Horse and Carlson—but neither provides for personal jurisdiction in this Court. This Court is not within the jurisdiction specified in the forum selection clauses. Moreover, the Complaint does not allege that the two NDAs were executed in Minnesota or that they were executed by any Minnesota entity or person. Consequently, Black Horse does not have sufficient contact with

Minnesota to support a finding that this Court has personal jurisdiction over it.

Additionally, Plaintiffs' Complaint is nothing more than a formulaic recitation of legal elements masquerading as factual allegations. Devoid of factual underpinnings, it presents the Court and Defendants with pages of boilerplate language and conclusory assertions. The Complaint presents a textbook example of implausible conclusory allegations under *Twombly* and *Iqbal*. Black Horse respectfully requests that Plaintiffs' legally unsupportable claims be dismissed with prejudice for failing to state any claims.

In the event that any claim survives, Black Horse respectfully requests that Plaintiffs' injunctive relief be denied. Plaintiffs admitted that they stopped providing trade secrets in August 2023. Doc. 1 ("Compl.") ¶ 38. Under the NDAs, all confidential obligations terminate two years after Black Horse's receipt of confidential information. *See* Doc. 1-1, ¶ 4; Doc. 1-2, ¶ 4. So, any NDA confidentiality obligations have now ended. Plaintiffs are not entitled to any injunctive relief because there is no irreparable harm, and an injunction should not be granted to enforce an expired obligation.

## I.    STATEMENT OF RELEVANT FACTS

Founded in 2012, Black Horse focuses on the manufacturing, processing, and repair of metal products, pet supplies, plastic products, textile goods, and tourism products. Black Horse operates in China and currently has no U.S. employees. Black

Horse's research and development, product design, and manufacturing activities occur entirely in China.

On January 9, 2025, Plaintiffs filed the instant Complaint with six counts, with Counts I–V asserted against Black Horse. Counts I–V generally allege a set of trade secret misappropriation causes of action based on a breach of confidentiality duties set forth in the NDAs between Plaintiffs and Black Horse. Count I alleges violation of the Defend Trade Secrets Act; Count II alleges civil conspiracy of trade secret misappropriation; Count III alleges violation of the Minnesota Uniform Trade Secret Act; Count IV alleges breach of the NDAs; Count V alleges fraudulent inducement.

## II.   <u>ARGUMENT</u>

### A. This Court Should Dismiss Plaintiffs' Complaint Under FRCP 12(b)(2) for Lack of Personal Jurisdiction over Black Horse.

Plaintiffs acknowledge that Black Horse "is an organization formed and operated in China." Compl. ¶ 10. The Complaint does not allege general personal jurisdiction. It attempts to establish specific personal jurisdiction based on the two NDAs. Compl. ¶ 17. "Due process is satisfied when a defendant consents to personal jurisdiction by entering into a contract that contains a valid forum selection clause." *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001). Thus, Black Horse being a party to the contract is crucial if there is no other basis for specific personal jurisdiction. *Hawkeye Gold v. China Nat'l Materials Industry*, 89 F.4th 1023, 1033 n.5 (8th Cir. 2023).

Specific jurisdiction may be found if Minnesota's long-arm statute would allow it, and if jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *NexGen HBM, Inc. v. ListReports, Inc.*, No. 16-cv-3143, 2017 WL 4040808, at *7 (D. Minn. Sept. 12, 2017) (citing *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015)). Because Minnesota's long-arm statute extends as far as the Due Process Clause allows, the Court need only consider whether exercising personal jurisdiction is consistent with due process. *Id.*

### 1. Black Horse Did Not Consent Personal Jurisdiction in This Court.

Under federal law, forum selection clauses "are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." *M.B. Rests., Inc. v. CKE Rests., Inc*., 183 F.3d 750, 752 (8th Cir. 1999) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). This Court may rely on federal case law applying general principles of contract law to interpret a forum selection clause. *Krause v. Integra LifeSciences Corp.*, No. 24-cv-4339 (LMP/ECW), 2025 U.S. Dist. LEXIS 131819, at *11 (D. Minn. July 11, 2025). If the written language does not contain an ambiguity, the "contract language must be given its plain and ordinary meaning, and shall be enforced by courts even if the result is harsh." *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346–47 (Minn. 2003) (citing *Minneapolis Pub. Hous. Auth. v. Lor*, 591 N.W.2d 700, 704 (Minn.1999)).

The NDAs alleged in the Complaint include the following clause:

> The parties hereto irrevocably (a) agree that any suit, action or other legal proceeding arising out of this Agreement may be brought in any court of competent jurisdiction of the State of Minnesota of the United States **located within the County of Burnsville**, State of Minnesota; (b) consent to the jurisdiction of *each **such court*** in any such suit, action or proceeding . . . .

Doc. 1-1, ¶ 5; Doc. 1-2, ¶ 5 (emphasis added).

This clause does not subject Black Horse to personal jurisdiction in this Court for two reasons: (1) this Court is not in Burnsville; and (2) this Court is not a court "of the State of Minnesota."

This Court is not located in Burnsville. None of this Court's four locations—Minneapolis, St. Paul, Duluth, and Fergus Falls—is located within Burnsville, which is a city, not a county. Furthermore, none of this Court's locations is located in Dakota County, in which Burnsville is located. Because none of this Court's four locations is "located within" the physical boundary of Burnsville or Dakota County, this Court clearly falls outside the forum selection clause. For this reason, Black Horse did not consent to the jurisdiction of this Court. *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1207 (9th Cir. 2011) (holding that "a forum selection clause that vests 'exclusive jurisdiction and venue' in the courts 'in' a county provides venue in the state and federal courts located in that county."). *See also Smart Comc'n Collier v. Pope Cty. Sheriff's Office*, 5 F.4th 895, 898 (8th Cir. 2021) (disregarding Plaintiff's

argument that a forum selection clause providing litigation "in Pope County, Arkansas and other pertinent Arkansas courts" includes federal courts because "there is no federal courthouse in Pope County.").

Even if this Court were to find that the specific reference to Burnsville does not by itself justify dismissal for lack of personal jurisdiction, Black Horse did not consent to the jurisdiction of this Court for the additional reason that the clause states that a suit "may be brought in any court of competent jurisdiction *of* the State of Minnesota . . . ," (emphasis added), which indicates the clause confers jurisdiction merely in state court, not federal court. The clause does not state "any court of competent jurisdiction *in* the State of Minnesota." The reference to courts "of the State of Minnesota" indicates that any jurisdiction conferred by this clause is limited to Minnesota state courts.

## 2. Without the Forum Selection Clause, Plaintiffs Cannot Otherwise Establish Personal Jurisdiction Over Black Horse.

The Eighth Circuit has established five factors for consideration in determining whether sufficient minimum contacts exist for personal jurisdiction: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010). The first three are primary factors, and the remaining two are secondary

factors. *Id.*

The first three primary factors weight against finding personal jurisdiction. *See Digi-Tel Holdings v. Proteq Telcomms.*, 89 F.3d 519, 523 (8th Cir. 1996) (stating that "[b]ecause the first three factors are closely interrelated, we consider them together."). Plaintiffs allege certain business transactions where they cooperated with Black Horse to manufacture certain products in China. Compl. ¶¶ 30–38. However, Plaintiffs do not plead that any part of these transactions happened anywhere other than China. Nor have Plaintiffs cited any evidence indicating that Black Horse has ever solicited business or advertised in Minnesota.

As discussed above, except for the forum selection clauses, the Complaint is devoid of any factual allegations that Black Horse ever had any contact with Minnesota; nor does it allege that any Minnesota person or entity ever shared any trade secrets with Black Horse directly. Thus, Black Horse's contact with Minnesota is insufficient to establish jurisdiction. *Compare Digi-Tel*, 89 F.3d at 525 (finding no personal jurisdiction over a Singaporean defendant because the negotiations, meetings, production, and delivery centered in Singapore and the defendant did not ship any products to Minnesota), *with K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 595–96 (8th Cir. 2011) (finding personal jurisdiction over a Spanish corporation is proper because the parties had a long-term business relationship where they had a face-to-face meeting in the forum state to negotiate amending the contract,

the contract required the corporation to ship products to the forum state, and the corporation made payments to the manufacturer in the forum state). Hence, Plaintiffs fail to allege any meaningful contact between Black Horse and Minnesota because "plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

Although the NDAs provided that Minnesota law governs the agreements, Doc. 1-1, ¶ 10; Doc. 1-2, ¶ 10, such a provision alone is insufficient to confer jurisdiction, and the complaint does not provide additional grounds for finding personal jurisdiction, either. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 481 (1985). Indeed, the Eight Circuit in *Digi-Tel* affirmed the District of Minnesota's dismissal of a complaint for lack of personal jurisdiction even though the contract at issue contained a Minnesota choice-of-law provision and the defendant sent numerous letters and faxes and made several telephone calls to Minnesota in connection with the contract-at-issue. 89 F.3d at 523. The court noted that:

> Thus the negotiations, meetings, production, and delivery were all centered in Singapore. The contacts with Minnesota appear at best as inconsequential rather than substantial under these circumstances. Proteq did not create a substantial connection between itself and Minnesota, it merely engaged in negotiations with a purchaser who happened to reside in Minnesota. Given the nature and quality of Proteq's contacts with Minnesota, traditional notions of fair play and substantial justice indicate that the corporation in Singapore would not expect to litigate in the State of Minnesota.

*Id*. at 525.

The complaint in this case does not allege that Black Horse sent letters to Minnesota, called Minnesota, or had any other form of contact with Minnesota. Therefore, even though the NDAs include a Minnesota choice-of-law provision, the allegations in the complaint fail to establish minimum contacts to support personal jurisdiction. The consideration of the "secondary factors" does not change the conclusion. First, while Minnesota has an interest in providing a local forum in which its resident may litigate claims against non-residents, the interest "cannot make up for the absence of minimum contacts." *Id*. The convenience of the parties favors Black Horse, as the business transaction happened entirely in China where most, if not all, witnesses reside.

Nor can Plaintiffs establish jurisdiction based on the theory that Black Horse has committed an intentional tort aiming at and having the consequences felt in the forum state, *i.e.*, the *Calder* effect test. *See Calder v. Jones*, 465 U.S. 783 (1984). Eighth Circuit and Supreme Court precedents limiting the reach of *Calder* suggest that the *Calder* test is not applicable to the present case. "[P]laintiff cannot be the only link between the defendant and the forum." *Walden* 571 U.S. at 285 (2014); *see also Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010) (stating that "[w]e therefore construe the *Calder* effects test narrowly, and hold that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction.");

*Pederson v. Frost*, 951 F.3d 977, 980 (8th Cir. 2020) (holding that when the only connection between the defendants and the forum state is the plaintiff, that is not enough contact to support personal jurisdiction).

The *Calder* effects test requires a plaintiff to show the presence of three elements: (1) that a defendant's acts were intentional; (2) that the acts "were uniquely or expressly aimed at the forum state"; and (3) that the acts "caused harm, the brunt of which was suffered—and which the defendant knew likely was to be suffered—[in the forum state]." *Kendall Hunt Publ'g Co. v. The Learning Tree Publ'g Corp.*, 74 F.4th 928, 931 (8th Cir. 2023).

Here, Plaintiffs have failed at least the second factor. The Complaint does not show that Black Horse deliberately created Minnesota contacts to conduct the alleged trade-secret misappropriation. Black Horse's manufacturing activities occurred exclusively in China. No evidence shows that Black Horse marketed or sold its products in Minnesota or anywhere else outside of China. Without more specific pleading, the Complaint cannot reasonably be construed to show that the alleged misappropriation-directed activities of Black Horse "were uniquely or expressly aimed" at Minnesota. *Id.* Thus, Black Horse should be dismissed for lack of personal jurisdiction.

**B. Plaintiffs' Complaint Should Be Dismissed Under FRCP 12(b)(6) for Failure to State a Claim.**

Black Horse moves to dismiss the Complaint under FRCP 12(b)(6). To withstand their motion, Plaintiffs must properly plead its claim under FRCP 8(a)(2) and meet the principles articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *See Wolff v. Bank of N.Y. Mellon*, 997 F. Supp. 2d 964, 970 (D. Minn. 2014). The Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 970–71. More than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is required. *Iqbal*, 556 U.S. at 678. In reviewing a motion to dismiss, the Court must accept all of the plaintiff's factual allegations as true and draw all inferences in the plaintiff's favor, but the Court is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (observing that the court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.").

**1. Counts I–III Fail to Adequately Plead Trade Secret Misappropriation Under the DTSA and MUTSA.**

It is appropriate to analyze the dismissal of the Plaintiffs' misappropriation claims—Count I under the federal Defend Trade Secrets Act ("DTSA") and Count

III under Minnesota Uniform Trade Secrets Act ("MUTSA")—together because the statutes share functionally equivalent definitions of "trade secret" and "misappropriation." *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1017 n.1 (8th Cir. 2020) (analyzing Minnesota Uniform Trade Secrets Act and DTSA together because parties did not identify any differences); *Prime Therapeutics LLC v. Beatty*, 354 F. Supp. 3d 957, 967 (D. Minn. 2018). If Counts I and III are dismissed under Rule 12(b)(6), Count II (civil conspiracy) must also be dismissed since "a civil conspiracy claim is merely a vehicle for asserting vicarious or joint and several liability," and hence is "dependent upon a valid underlying tort claim." *Carlson v. A.L.S. Enters.*, 2008 U.S. Dist. LEXIS 3981, at *15 (D. Minn. Jan. 18, 2008); *Sick, Inc. v. Motion Control Corp.*, Civ. No. 01-1496, 2003 WL 21448864, at *10 (D. Minn. June 19, 2003) (citations omitted). *Accord Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1070 (D. Minn. 2003).

"To demonstrate misappropriation of trade secrets, [plaintiff] must show, among other things, the existence of a protectable trade secret and misappropriation of that trade secret." *Ahern Rentals, Inc. v. EquipmentShare.com*, Inc., 59 F.4th 948, 955 (8th Cir. 2023). *See also TE Connectivity Networks, Inc. v. All Sys. Broadband, Inc.*, No. 13-cv-1356 (ADM/FLN), 2013 WL 6827348, at *3 (D. Minn. Dec. 26, 2013) (providing a plaintiff company must describe their trade secrets with more than "conclusory statements," and with "sufficient information to infer more than a

mere possibility of misconduct").

The DTSA defines "trade secret" as information that the owner has taken reasonable measures to keep secret and that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

The DTSA defines "misappropriation" as the "acquisition . . . by improper means," "disclosure," or "use" of another's trade secret by someone who "at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret" or "derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret." 18 U.S.C. § 1839(5).

### a) Plaintiffs failed to plausibly allege the existence of a trade secret.

To adequately plead the "existence" element, a plaintiff must "define its alleged trade secrets with sufficient specificity." *Prime Therapeutics LLC v. Beatty*, 354 F. Supp. 3d 957, 967 (D. Minn. 2018). Additionally, a plaintiff must "set forth facts showing that the information had independent economic value due to its secrecy, was not readily ascertainable by others, and that [the plaintiff] took efforts to maintain its secrecy." *Hot Stuff Foods, LLC v. Dornbach*, 726 F. Supp. 2d 1038,

1044 (D. Minn. 2010). Merely stating that the information is confidential is insufficient. *Id*.

Plaintiffs' Complaint described the purported trade secret as "[t]hose trade secrets included (but were not limited to) substantial elements of the manners and means to fabricate Plaintiffs' products effectively and economically." Compl. ¶ 45. The generic, lacking-in-details manner of description is comparable to the allegations at issue in *Hot Stuff Foods*, 726 F. Supp. 2d at 1044, which alleged that defendant had "access to confidential information concerning its business plans, pricing, margins and sales strategies." *Id.*

Moreover, as in *Hot Stuff Foods*, Plaintiffs provided no explanation for their conclusory statements that the information had independent economic value due to its secrecy and was not readily ascertainable by others. Compl. ¶¶ 44, 57, 77. Plaintiffs' allegations that purported trade secrets "were not readily known" and "provided Plaintiffs with a competitive advantage," *see id*. ¶ 44, are no better than the conclusory statements found to be insufficient in *Hot Stuff Foods*. 726 F. Supp. 2d at 1044.

Therefore, this Court should follow *Hot Stuff Foods,* conclude that the Complaint lacks the factual content necessary for the court to reasonably infer the existence of trade secrets, and dismiss Plaintiffs' trade secret claims for failure to adequately plead the existence of a trade secret.

**b)   Plaintiffs also failed to plausibly allege misappropriation.**

Stripping away the threadbare allegations reciting legal conclusions, the only remaining factual allegations that could support Plaintiffs' trade secrets misappropriation claims is that Lucas—a former employee of Plaintiffs—stole Plaintiffs' trade secrets for Black Horse. Compl. ¶¶ 36–39.

The Complaint provides two sets of facts that purportedly support the accusations involving Lucas. The first set of facts is that Lucas is the named inventor of U.S. Patent No. D924,434 (the "'434 Patent") assigned to Kony. Compl. ¶ 42. But the Complaint provides no explanation for how the '434 Patent is relevant to Plaintiffs' claims. The ambiguity created by Plaintiffs should not be construed in their favor. If Plaintiffs mean to say that '434 Patent relates to Plaintiffs' trade secrets, then Plaintiff must explicitly plead it; if it does not, then hiring an employee already terminated by Plaintiffs is neither tortious nor otherwise unlawful. Compl. ¶ 41. Nor does Kony's application for a patent before the USPTO create a reasonable inference of "misappropriation" of Plaintiffs' trade secrets. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation omitted).

The second set of facts alleged is that Kony "used Plaintiffs' trade secrets to manufacture and sell products" on several online platforms. Compl. ¶¶ 48–51. Here,

Plaintiffs no doubt possess information about the existence of their own trade secrets to the extent they exist in Kony's products. Plaintiffs specifically allege that products sold through "Aborder," "Amazon," "Chewy," and "PetSmart" have "used Plaintiffs' trade secrets." Compl. ¶¶ 48–50, 60. But Plaintiffs fail to identify any particular products that allegedly incorporate Plaintiffs' purported trade secrets or explain how their purported trade secrets are reflected in those products. Therefore, Plaintiffs have failed to satisfy the notice pleading standards. Counts I–III must be dismiss as they "amounted to pure speculation." *Id.* at 955.

### c)    Plaintiffs' common law claim must be dismissed in any event.

Count III also asserts a Minnesota state common law trade secret claim. Compl. ¶ 75. The common law claim should be dismissed regardless of any of Counts I–III survives, because MUTSA preempts state common law causes of action. Minn. Stat. § 325C.07 (MUTSA "displace conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.").

As the MUTSA and common law trade secret claims are based on the same nucleus of operative facts, the common law claim is preempted as a matter of law. Plaintiffs have no remedy under common law in any event, regardless of whether its MUTSA claim survives dismissal. *See Micro Display Sys., Inc. v. Axtel, Inc.*, 699 F. Supp. 202, 204 (D. Minn. 1988) (holding that "a separate cause of action for

misappropriation of trade secrets is now displaced and such actions must be brought under the MUTSA").

## 2. Count II Fails to Allege Any Conscious Agreement or Coordinated Conduct.

Plaintiffs' civil conspiracy claim against all Defendants (Count II) is an impermissible "shotgun pleading"—a calculated attempt to transform the routine, lawful conduct of separate entities into a fabricated conspiracy through deliberate obfuscation. By bundling unrelated business activities of distinct corporations occurring at different times, Plaintiffs seek to create a sense of wrongdoing without any explicit pleading of conscious agreement or coordinated conduct. This tactical gamesmanship violates fundamental pleading standards, and has no place in federal court. *See e.g., Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018) (observing that shotgun pleadings "employ[] a multitude of claims and incorporates by reference all of its factual allegations into each claim, making it nearly impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief."); *Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011) (concluding that by filing a shotgun pleading, "plaintiffs have essentially coughed up an unsightly hairball of factual and legal allegations, stepped to the side, and invited the defendants and the Court to pick through the mess and determine if plaintiffs have pleaded a viable claim or two.").

A Minnesota civil conspiracy claim "is merely a means for asserting vicarious or joint and several liability." *Am. Comput. v. Jack Farrell Implement Co.*, 763 F. Supp. 1473, 1489 (D. Minn. 1991). Plaintiffs must allege facts to show Defendants "reached some agreement and conspired together to injure the plaintiff." *Gometz v. Culwell*, 850 F.2d 461, 464 (8th Cir. 1988) (internal citation and quotation omitted); *see also Marty H. Segelbaum, Inc. v. MW Capital, LLC*, 673 F. Supp. 2d 875, 880–81 (D. Minn. 2009). "A plaintiff cannot merely incant the words 'conspiracy' or 'agreement' in order to adequately plead conspiracy." *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 839 (D. Minn. 2012) (dismissing with prejudice civil conspiracy claim); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 447 (2007) (concluding that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

Plaintiffs' Complaint is bereft of allegations that Defendants reached an agreement to commit a tort. Instead, the allegations pertain to distinct conduct occurring at different times by separate entities that, aside from alleged common control, have no apparent connection. The Complaint attempts to connect the following transactions into a conspiracy: (1) that Black Horse and Plaintiffs had a business cooperation, Compl. ¶¶ 30–35; (2) that Lucas worked for Defendants after Lucas's relationship with Plaintiffs ended and allegedly stole Plaintiffs' trade secrets for Defendants' benefit, Compl. ¶¶ 39–44; and (3) that Defendants "used Plaintiffs'

trade secrets to manufacture and sell products" on several online platforms, Compl. ¶¶ 48–51. The allegation that Defendants "used Plaintiffs trade secrets" is merely a threadbare recitation of legal conclusions which should be disregarded. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (The court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.").

After stripping away the conclusory allegations, no reasonable inference of agreement or coordination between Black Horse and Kony can be drawn from these allegations. Negotiating and signing business contracts, hiring an unemployed person, applying for a patent, and selling products online are all routine business activities. It is well-established that to plead conspiracy, plaintiffs must plead sufficient non-conclusory facts to support a reasonable inference of agreement. *Twombly*, 550 U.S. at 554 ("[P]roof of a § 1 conspiracy must include evidence tending to exclude the possibility of independent action."); *Motley v. Homecomings Fin. LLC*, 557 F. Supp. 2d 1005, 1009 n.1 (D. Minn. 2008) (concluding *Twombly* standard is not limited to claims alleging antitrust conspiracies). Because the Complaint includes no factual allegations that plausibly suggest that Defendants agreed to engage in tortious conduct and took concerted actions to achieve that purpose, Plaintiffs' civil conspiracy claim should be dismissed.

### 3. Count IV Fails to Allege a Single Instance of Breach.

Under Minnesota law, an action for breach of contract requires three elements: (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to its right to demand performance by the defendant, and (3) breach of the contract by the defendant. *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). To plausibly state a breach-of-contract claim, "Plaintiffs were required to plead sufficient facts to demonstrate why and how [defendant] allegedly breached its contracts with Plaintiffs; it is not enough for them to simply recite the magic word 'breach' in order to avoid dismissal." *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1013 (D. Minn. 2008) (citing *Twombly*, 550 U.S. at 570); *see also DeCastro v. Hot Springs Neurology Clinic, P.A.*, 107 F.4th 813, 816 (8th Cir. 2024) (dismissing a breach-of-contract claim which is "silent about *how* [defendants] allegedly failed to uphold their end of the bargain").

As such, Plaintiffs' textbook conclusory breach-of-contract allegation must be dismissed. Plaintiffs claim that Black Horse breached the confidentiality provision of the Agreement by using "Plaintiffs' know-how and other trade secret information" to "fabricate and manufacture children and pet products." Compl. ¶ 87. First of all, Plaintiffs allege no fact showing that any information provided to Black Horse was confidential or included trade secrets. To properly plead a trade secret, as discussed above, plaintiffs must first identify the trade secret with "sufficient

particularity" and then plead facts that plaintiffs took steps to keep the information secret. *See Schlief v. Nu-Source, Inc.*, No. 10-cv-4477, 2011 U.S. Dist. LEXIS 44446, at *11 (D. Minn. Apr. 25, 2011) (requiring that a party claiming breach of NDA "must plead facts identifying the type of [] confidential information that it alleges" was sent to the alleged breaching party). Plaintiffs failed to do so. The Complaint does not identify a single instance of Black Horse's breach of confidentiality duties under the NDAs.

The Complaint fails to identify Plaintiffs' trade secrets beyond merely reciting the term "trade secret" verbatim. In *Schlief v. Nu-Source*, this Court addressed an employee's motion to dismiss his former employer's breach-of-NDA counterclaim. *Id.* at *10–11. The employer plead a specific instance of misappropriation: the employee "instructed the computer technicians to (1) copy all of the [work] computer's data, including confidential company data, onto an external hard drive." *Id.* at *10. This Court found the allegation insufficient to state a plausible claim. *Id.* at *10–11. This Court explained that, "[at] a minimum, [the employer] must plead facts *identifying the type of [] confidential information* that it alleges was copied from [the] computer to the external hard drive." *Id.* at *11 (emphasis added).

Under the reasoning of *Schlief*, Plaintiffs cannot simply allege that confidential information was disclosed to defendant without identifying the specific type of confidential information at issue. Notably, the employer in *Schlief* at least

identified a specific instance of information transfer—copying the work computer's data to external hard drive—thereby providing the employee with definite notice of the claim. Here, Plaintiffs have not alleged even that much. Thus, following the standard of *Schlief*, Count IV must be dismissed.

Moreover, the Complaint does not allege any facts to support that Black Horse misused trade secrets or confidential information. A plaintiff must describe its trade secrets with more than "conclusory statements," and with "sufficient information to infer more than a mere possibility of misconduct." *TE Connectivity Networks, Inc. v. All Sys. Broadband, Inc.*, No. 13-cv-1356 (ADM/FLN), 2013 WL 6827348, at *3 (D. Minn. Dec. 26, 2013); *Meritage Homes Corp. v. Hancock*, 522 F. Supp. 2d 1203, 1220 (D. Ariz. 2007) (holding that because plaintiff could not cite to any specific instances of use or disclosure of trade secrets, its conclusory statement that defendant's misappropriation of trade secrets was inevitable was insufficient). Merely doing some business with Plaintiffs does not allow a court to draw a reasonable inference that Black Horse even knew what constituted Plaintiffs' trade secrets, let alone used them in its products. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation omitted).

For these reasons, Plaintiffs' claim that Black Horse breached the

confidentiality provision lacks plausibility and must be dismissed.

### 4. Count V Should Be Dismissed for Failure to Plead Fraud With Particularity Under FRCP 9(b).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) thus requires pleading, at minimum, the "time, place and contents of false representations, as well as the identity of the person making the misrepresentation." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549 (8th Cir. 1997) (quotation omitted). The Complaint "must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *United States ex rel. Thayer v. Planned Parenthood of the Heartland*, 765 F.3d 914, 916–17 (8th Cir. 2014). The complaint also "must provide some representative examples of [the defendant's] alleged fraudulent conduct, specifying the time, place, and content of [the defendant's] acts and the identity of the actors." *United States ex rel. Joshi v. St. Luke's Hospital, Inc.*, 441 F.3d 552, 557 (8th Cir. 2006). Put another way, a claim for fraud must allege "the who, what, when, where, and how: the first paragraph of any newspaper story." *Id.* at 549–50 (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Rule 9(b)'s particularity requirement applies to claims for fraudulent inducement. *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1145 (D. Minn. 2016) (Tunheim, C.J.).

The Complaint alleges merely that "Black Horse and Bill negotiated and executed the Agreements with no present intention to honor them" and "sought to lull Plaintiffs into a false sense of security," Compl. ¶ 40, and that Black Horse "made various made various representations to Plaintiffs including, but not limited to, terms, obligations, covenants and conditions" set forth in the NDAs that were false "or were otherwise made with no present intention to perform them," *id*. ¶ 93. The allegation patently lacks Rule 9(b) particularity. It generally alleges the intent of Black Horse and Bill, but pleads absolutely no "representative examples of [the defendant's] alleged fraudulent conduct, specifying the time, place, and content of [the defendant's] acts and the identity of the actors." *Joshi*, 441 F.3d at 557. Nor does it provide any "details of the defendant's fraudulent acts." *Thayer*, 765 F.3d at 916–17. As such, Count V must be dismissed.

## C. If Any Claim Were to Survive, Plaintiffs' Request for Injunctive Relief Should Be Denied.

In the event that any claims survive, Black Horse respectfully requests that this Court deny Plaintiffs' request for "a preliminary and permanent injunction against Defendants and any entity associated with or acting in active concert with Defendants precluding such further acts or trade secret misappropriation and enjoining the import or sales of any products manufactured in any way using Plaintiffs' trade secrets." Compl. at 18–19.

The Defend Trade Secrets Act states that a court "may grant an injunction . .

. to prevent any actual or threatened misappropriation[.]" 18 U.S.C. § 1836(b)(3)(A)(i). Generally, "[a]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010). An injunction is not a punitive tool, but rather a vehicle for preventing injury. *3M v. Pribyl*, 259 F.3d 587, 609 (7th Cir. 2001).

The DTSA does not lay out what standard should apply when considering injunctive relief. Courts will look at well-established principles of equity when considering plaintiff's requests. *See Prime Therapeutics LLC v. Beatty*, 354 F. Supp. 3d 957, 967 (D. Minn. 2018); *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, No. 1:17-cv-1973, 2020 U.S. Dist. LEXIS 272779, at *7 (N.D. Ill. Dec. 17, 2020). District courts should weigh four factors in deciding for preliminary injunctive relief: (1) whether there is a substantial probability that the movant will succeed at trial; (2) whether the movant will suffer irreparable injury absent the injunction; (3) the harm to other interested parties if the relief is granted; and (4) the effect on the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 112 (8th Cir. 1981). A plaintiff seeking a permanent injunction must satisfy a four-factor test demonstrating: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. Mercexchange, LLC*, 547 US 388, 391 (2006).

Plaintiffs are not entitled to any injunctive relief, preliminary or permanent, because there is no irreparable harm as a matter of law. Plaintiffs stopped providing trade secrets in August 2023. Compl. ¶ 38. The NDAs between Plaintiffs and Black Horse provide all confidential obligations terminate two years after Black Horse's receipt of confidential information. *See* Doc. 1-1, ¶ 4; Doc. 1-2, ¶ 4. It follows that starting on September 2025, Black Horse owes no confidentiality obligation to Plaintiffs. "Generally, injunctive relief based on a contract must be coextensive with the terms of the contract." *Cherne Indus., Inc. v. Grounds & Assocs., Inc.*, 278 N.W.2d 81, 93 (Minn. 1979) (citation omitted). Thus, if the period of a restrictive covenant has expired, an injunction will not be granted to enforce the covenant. *Id; see also Dunn v. Assocs. in Psychiatry & Psychology, P.A.*, No. 22-cv-615, 2022 WL 22694603, at *8 (D. Minn. Nov. 10, 2022) (concluding that "[t]he Court agrees that the six-month period has expired for these covenants and that no reason justifies extending the covenants."). Therefore, Plaintiffs' request for injunctive relief should be denied.

## III.  <u>CONCLUSION</u>

For the foregoing reasons, Black Horse respectfully requests that the motion to dismiss be GRANTED.

September 19, 2025                          Respectfully submitted.

                                                  By: <u>s/ J. Benjamin Bai</u>

                                                  J. Benjamin Bai (*pro hac vice*)
Texas Bar No. 24001675
King & Wood Mallesons LLP
500 Fifth Avenue, 50th Floor
New York NY 10110
Telephone: (212) 319-4755
E-mail: benjamin.bai@cn.kwm.com

                                                  Haolu Feng (*pro hac vice*)
D.C. Bar No. 90001026
King & Wood Mallesons
17th Floor, One ICC, Shanghai ICC
999 Middle Huai Hai Road, Xuhui District
Shanghai 200031 China
Telephone: (206) 499-2956
Email: harry.feng@cn.kwm.com

                                                  Clinton L. Conner
MN SBN 0396192
CONNER IP
729 N. Washington Ave., Suite 600
Minneapolis, MN 55401
Telephone: (612) 474-3581
Email: conner.clint@connerip.com

                                                  *Attorneys for Defendant*
*Ningbo Black Horse Tourism Products Co. Ltd.*