# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

Regalo International, LLC et al.

       Plaintiffs,

v.

Ningbo Black Horse Tourism Products
Co., Ltd et al.

       Defendants.

Civil Action No.
0:25-cv-00361-KMM-DLM

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT KONY'S MOTION TO DISMISS

## **TABLE OF CONTENTS**

I.   STATEMENT OF RELEVANT FACTS ............................................................2

II.  ARGUMENT ...............................................................................................3

A. The Court Does Not Have Personal Jurisdiction Over Kony. .........................3

1.  The *Calder* Effects Test Is Not Satisfied Because Plaintiffs' Location
    Cannot Be the Sole Basis for Jurisdiction. .....................................................4

2.  Count VI's Trademark Claim Fail To Establish Specific Jurisdiction
    Through Online Sale...........................................................................................8

3.  Plaintiff's Allegation of Conspiracy-Based Jurisdiction Fails Due to the
    Absence of Any Overt Act in Minnesota. ....................................................10

B. Plaintiffs' Complaint Shall Be Dismissed for Failure To State A Claim .......12

1.  Counts I–III Fail To Adequately Plead Trade Secret Misappropriation Under
    the DTSA and MUTSA. ...................................................................................13

2.  Count II Fails To Allege Any Conscious Agreement or Coordinated
    Conduct..............................................................................................................18

3.  Count VI Fails To State A Claim for Trademark Infringement Under the
    Lanham Act. ......................................................................................................21

III. CONCLUSION ..........................................................................................24

Plaintiffs brought this action against Defendants Ningbo Kony Metal Products Co., Ltd. ("Kony") and Ningbo Black Horse Tourism Products Co. Ltd. ("Black Horse"). Of the six counts in the complaint, Plaintiffs assert four (Counts I–III and VI) against Kony. Counts I–III generally relate to an alleged trade secret misappropriation; while Count VI alleges trademark infringement under the Lanham Act. Defendant Kony hereby moves for dismissal of all counts that Plaintiffs assert against it for lack of personal jurisdiction.

Counts I–III center on alleged confidentiality obligations springing from two alleged non-disclosure agreements ("NDAs") – one between Black Horse and Regalo and one between Black Horse and Carlson. Kony is not a party to either alleged NDA; nor do Plaintiffs plead that the NDAs bind Kony. [1] Plaintiffs improperly seek to hale Kony – a company that resides on the other side of the globe – to this Court without alleging any relationship between Kony and the acts of which Plaintiffs complain. The sole connection set forth in the Complaint between Kony and this forum is the injury Plaintiffs allegedly suffered here: a factor that the Eighth Circuit has held cannot alone be the basis for personal jurisdiction. Counts I–III should therefore be dismissed for lack of personal jurisdiction.

---

[1] *See Calder v. Jones,* 465 U.S. 783, 790 (1984) (stating that "ach defendant's contacts with the forum State must be assessed individually."); *Hawkeye Gold v. China Nat'l Materials Industry*, 89 F.4th 1023, 1023 (8th Cir. 2023) (finding a forum selection clause in an agreement signed by subsidiary does not bind parent company).

Additionally, while Plaintiffs allege they have trade secret rights in a generally-stated laundry list of purported business and manufacturing information, Plaintiffs fail to contend with particularity that any Kony product – which Plaintiffs know are readily available online – relates to any aspect of Plaintiffs' alleged trade secret. As such, Counts I–III are defective and Kony must be dismissed under Rule 12(b)(6) as well.

Perhaps realizing the tenuous nature of Kony's contact with this case and Minnesota, Plaintiffs added a trademark infringement claim (Count VI) against Kony. Yet, they failed to identify a single infringing product attributable to Kony. Count VI thus amounts to a baseless attempt at haling Kony into this Court, and must be dismissed under both Rule 12(b)(2) and Rule 12(b)(6) as gamesmanship.

## I.    STATEMENT OF RELEVANT FACTS

Founded in 2015, Kony focuses on the metal smelting and rolling processing industry. Kony operates in China and currently has no U.S. employees. Kony's product research and development, design, or manufacturing activities occur entirely in China.

On January 9, 2025, Plaintiffs filed the instant Complaint with six counts. Counts I–V generally allege a set of trade secret misappropriation causes of action based on an alleged breach of confidentiality duties set forth in two alleged NDAs involving co-Defendant Black Horse. Count I alleges violation of the Defend Trade

Secrets Act; Count II alleges civil conspiracy of trade secret misappropriation; Count III alleges violation of the Minnesota Uniform Trade Secret Act; Count IV alleges breach of the NDAs; Count V alleges fraudulent inducement. Counts I–III are claimed against Kony while Counts IV–V were not, for the apparent reason that as a non-party Kony cannot breach the NDAs or fraudulently induce Plaintiffs to sign thereon.

Count VI, which does not arise under a common nucleus of facts with Counts I–V, alleges trademark infringement under the Lanham Act and is asserted against only Kony.

## II.  ARGUMENT

### A. The Court Does Not Have Personal Jurisdiction Over Kony.

Plaintiffs acknowledge that Kony "is an organization formed and operated in China." Compl. ¶ 13. The Complaint does not allege general personal jurisdiction over Kony. As for specific jurisdiction, it may be present if Minnesota's long-arm statute would allow it, and if jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *NexGen HBM, Inc. v. ListReports, Inc.*, No. 16-cv-3143 (SRN/FLN), 2017 WL 4040808, at *7 (D. Minn. Sept. 12, 2017) (citing *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015)). Because Minnesota's long-arm statute extends as far as the Due Process Clause allows, the Court need only consider whether exercising personal jurisdiction is consistent with

due process. *Id.*

Plaintiffs attempt to establish specific personal jurisdiction over Kony on two alternative theories: first, Plaintiffs allege that this Court has personal jurisdiction over Kony because Kony's purposeful conduct was directed at and experienced by Plaintiffs, who reside in this judicial district; second, Kony "acts in concert with Black Horse and Bill and is a co-conspirator with Black Horse." Compl. ¶ 18. The first theory invokes the *Calder* effects test established in *Calder v. Jones*, 465 U.S. 783 (1984). The second one invokes so-called conspiracy-based jurisdiction, where a court may assume jurisdiction over an out-of-state co-conspirator when the in-state acts of conspirators in furtherance of a conspiracy are attributable to the co-conspirator. *Hunt v. Nevada State Bank*, 285 Minn. 77, 172 N.W.2d 292 (1969). Both theories fail for reasons discussed below.

### 1. The *Calder* Effects Test Is Not Satisfied Because Plaintiffs' Location Cannot Be the Sole Basis for Jurisdiction.

Essentially, Plaintiffs' first personal jurisdiction theory focuses solely on the fact that Plaintiffs are located in this state, *i.e.*, a broad theory loosely based on *Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* effects test requires a plaintiff to show the presence of three elements: (1) that a defendant's acts were intentional; (2) that the acts "were uniquely or expressly aimed at the forum state"; and (3) that the acts "caused harm, the brunt of which was suffered—and which the defendant knew likely was to be suffered—[in the forum state]." *Kendall Hunt Publ'g Co. v. The*

*Learning Tree Publ'g Corp.*, 74 F.4th 928, 931 (8th Cir. 2023) (quoting *Brothers and Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 954 (8th Cir. 2022)). The Eighth Circuit "construe[s] the Calder effects test narrowly" in the sense that "mere effects in the forum state are insufficient to confer personal jurisdiction." *Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010).

Plaintiffs' location-based jurisdiction theory is contrary to well-established Eighth Circuit and Supreme Court precedent, both of which acknowledge the limited reach of *Calder*. "[P]laintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "[A] plaintiff's contacts with the forum State cannot be decisive in determining whether the defendant's due process rights are violated." *Id.* at 280. Instead, courts must focus on the defendant's contacts with the forum state, not on the plaintiff's contacts. *Id.* at 291*; see also Pederson v. Frost*, 951 F.3d 977, 980 (8th Cir. 2020) (when the only connection between the defendants and the forum state is the plaintiff, that is not enough contact to support personal jurisdiction). In *Johnson v. Arden*, 614 F.3d 785,797 (8th Cir. 2010), the court stated that "[w]e . . . construe the *Calder* effects test narrowly, and hold that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction."

In *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020), the Eighth Circuit noted that the Supreme Court narrowed its holding in *Calder* to subject the effects

test to two interrelated limitations. *Id.* First, the defendant's relationship with the forum state "must arise out of contacts that the 'defendant himself' created with the forum state." *Id.* "Second, we look to the defendant's contacts and conduct with the forum state itself, not the defendant's contacts with persons who reside there." *Id.* (quoting *Walden*, 571 U.S. at 284);

A recent case from this Court bears a striking similarity with the present case and illustrates why there is no personal jurisdiction over Kony in this case. *See Ecolab Inc. v. IBA, Inc.*, No. 22-cv-479 (ECT/DTS), 2023 WL 7091853 (D. Minn. Oct. 26, 2023). There, Ecolab, a Minnesota company, entered into a license agreement with IBA to "make, have made, use, sell and import external udder care products." *Id.* at *1. Pursuant to the license agreement, the licensee subsequently authorized two third-party manufacturers, Webco and Custom Chemical (both non-Minnesota companies), to manufacture the external udder care products. *Id.* at *2. Although the license agreement between Ecolab and IBA includes a confidentiality provision which allegedly applies to third parties, *id.* at *1, it is undisputed that the two third-party manufacturers were not parties to the license agreement. *Id.* at *5, *8. When later Ecolab sued the IBA and the two manufacturers alleging breach of contract and trade secret misappropriation, the two manufacturer defendants moved to dismiss for lack of personal jurisdiction. *Id.* at *1. In granting the motion to dismiss, this Court concluded that the second *Calder* element was not satisfied:

Ecolab has not shown that Webco deliberately created Minnesota contacts to carry out the alleged trade-secret misappropriation. The primary allegation supporting these claims seems to be that Webco continued manufacturing acidified sodium chloride teat-dip products using Ecolab's trade secrets after the Agreement's expiration. But Webco's manufacturing activities occurred exclusively in Massachusetts. If Ecolab means to allege that Webco's misappropriation went beyond manufacturing—to marketing or selling the products, for example—the record still does not show that Webco deliberately created contacts with Minnesota. No evidence shows that Webco marketed or sold acidified sodium chloride teat-dip products in Minnesota or anywhere else. To summarize then, the record cannot reasonably be construed to show that Webco's misappropriation-directed activities "were uniquely or expressly aimed" at Minnesota. *Kendall Hunt Publ'g Co.*, 74 F.4th at 931.

*Id.* at *7.

The fact pattern of the present case is nearly identical to *Ecolab*. Kony is incorporated and operates in China, not Minnesota. Plaintiffs point to NDAs between Plaintiffs and Black Horse. But nothing in the NDAs is relevant to Kony; nor do Plaintiffs allege that the NDAs bind Kony. The primary location-specific allegations that support a trade-secret claim against Kony is that Kony "used Plaintiffs' trade secrets to manufacture and sell products retailed and sold in the United States by [certain online shopping platforms]." Compl. ¶ 50-51. The allegation is insufficient in light of *Ecolab*. Firstly, by pointing out to the United States generally, it does not allege, much less prove, that Kony "deliberately created contacts with Minnesota." *Ecolab*, 2023 WL 7091853, at *7. Second, as *Ecolab* suggests, barebones allegation is insufficient. Plaintiff must provide "evidence

7

shows that [Kony] marketed or sold [products using Plaintiffs' trade secrets] in Minnesota." *Id.* The Complaint does not even identify a specific Kony product using Plaintiffs' trade secrets, despite Plaintiffs' stated knowledge that the Kony products are allegedly available for purchase online, Compl. ¶¶ 48–51, let alone allege that specific products were marketed and sold specifically in Minnesota. Therefore, *Ecolab* compels a finding of lack of contact with Minnesota by Kony.

**2. Count VI's Trademark Claim Fail To Establish Specific Jurisdiction Through Online Sale.**

Plaintiffs' Count VI, which is a trademark infringement claim under the Lanham Act, alleges a different set of facts generally unrelated to Count I–III. Therefore, a separate basis of specific jurisdiction is required. *See Zumbro, Inc. v. Cal. Natural Prods.*, 861 F. Supp. 773, 779 (D. Minn. 1994) ("Because specific jurisdiction requires a nexus between the defendant's contacts with the forum state and the subject matter of Zumbro's claims in this litigation, it is necessary to address each of Zumbro's claims individually."); *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006) (concluding specific personal jurisdiction is a "claim-specific inquiry" and "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.").

Plaintiffs, by pleading that Kony sells its products on several online platforms, seem to suggest that Kony's mere online sales of products is sufficient to create specific personal jurisdiction in Minnesota. Compl. ¶¶ 48–51, 111–117. This

jurisdiction theory has been repeatedly rejected by the Eighth Circuit. In considering jurisdiction of Lanham Act claim alleging trademark infringement, the Eighth Circuit expressly "decline to confer personal jurisdiction based on only the possibility that a [resident of the forum state] had contact with [defendant] through [defendant's interactive website]." *Johnson v. Arden*, 614 F.3d 785,797 (8th Cir. 2010). The court reasoned that simply pointing out the interactive nature of defendant's website to show its accessibility in the forum state is not enough to confer jurisdiction. *Id.* Instead, plaintiff must provide "evidence that individuals in the forum state accessed the website in doing business with the defendant." *Id.* Similarly, the court also found the plaintiff failed the *Calder* effects test because it did not prove that defendant's website "uniquely or expressly aimed at [the forum state]." *Id.* at 797–98.

In a recent case, the Eighth Circuit reaffirmed its *Johnson* approach. *See Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948 (8th Cir. 2022). In *Zazzle*, plaintiff purchased a single shirt which allegedly had a logo that infringed plaintiff's trademark for shipment to Missouri. *Id.* at 950. Plaintiff failed to allege any other connection with Missouri beyond that single purchase. *Id.* at 951, 953. The court held Missouri did not have jurisdiction over defendant. *Id.* at 954. The court concluded that "a single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant." *Id.* at 953 (citing *J.*

*McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 888 (2011) (Bryer, J., concurring)). The court also refused to assume jurisdiction according to the *Calder* effect test, finding that "[defendant's] website is nationally accessible, and nowhere does [plaintiff] allege that [defendant] specifically targeted Missouri consumer or the Missouri market." *Id.* at 954 (citing *Johnson,* 614 F.3d at 798).

In light of *Zazzle,* it follows that Plaintiffs' Count VI must be dismissed for lack of personal jurisdiction. If evidence proving a single sale to the forum state cannot establish jurisdiction for a Lanham Act claim, then Plaintiffs' attempt to hale Kony into this Court without any evidence whatsoever must certainly fail.

**3.  Plaintiff's Allegation of Conspiracy-Based Jurisdiction Fails Due to the Absence of Any Overt Act in Minnesota.**

Plaintiffs also suggest a conspiracy-based jurisdiction theory alleging that Kony "acts in concert with Black Horse and Bill and is a co-conspirator with Black Horse." Compl. ¶ 18. It follows that if Black Horse is not subject to personal jurisdiction in this Court, Kony cannot be subject to personal jurisdiction in this Court, under this conspiracy-based jurisdiction theory. As set forth in the motion to dismiss filed concurrently herewith by co-Defendant Black Horse, it is not subject to personal jurisdiction in this Court. For the same reasons set forth in that motion, Kony cannot be subject to personal jurisdiction in this Court under Plaintiffs' conspiracy-based jurisdiction theory.

More specifically, the NDAs do not subject Black Horse (or, by extension,

Kony) to personal jurisdiction in this Court because the forum selection clause is inapplicable to this Court – this Court is not in Burnsville and is not a court "of the State of Minnesota" – and a Minnesota choice-of-law provision cannot alone establish personal jurisdiction in Minnesota. *See Digi-Tel Holdings v. Proteq Telcomms.*, 89 F.3d 519, 525 (8th Cir. 1996).

Even if this Court were to hold that Black Horse is subject to personal jurisdiction, the Complaint does not plead sufficient grounds for personal jurisdiction over Kony as a co-conspirator. Minnesota has recognized conspiracy-based personal jurisdiction over a co-conspirator for whom jurisdiction would otherwise be absent, provided that the acts of conspirators in furtherance of a conspiracy are attributable to the co-conspirator. *Hunt v. Nevada State Bank*, 285 Minn. 77, 172 N.W.2d 292 (1969). Conspiracy-based personal jurisdiction requires a showing that (1) a conspiracy existed, (2) the non-resident defendant participated in or joined the conspiracy, and (3) an overt act was taken in furtherance of the conspiracy within the forum's borders. *Peterson v. Wallace*, 622 F. Supp. 2d 791, 801 (D. Minn. 2008). To comport with due process, the third element "requires a plaintiff to allege two place-based facts: (1) an overt act occurred in Minnesota and (2) a harm of this overt act was directly felt by Minnesotans." *WinRed, Inc v. Ellison*, 581 F. Supp. 3d 1152, 1164 (D. Minn. 2022).

Applying the standard set by aforementioned case law, Plaintiffs' conspiracy-

based jurisdiction theory also fails. First, Plaintiffs' conspiracy-related pleadings are entirely recitation of elements of cause of actions without any particularity, therefore cannot help to create a *prima facie* case for conspiracy-based jurisdiction. Second, Plaintiffs' Complaint has not pleaded *any* facts—whether conclusory or not—that an overt act occurred *in Minnesota*, which is required to establish conspiracy-based jurisdiction here. *WinRed*, 581 F. Supp. 3d at 1164. This lack of facts is consistent with the Complaint. Kony is a company residing in China as correctly plead by the Complaint. Compl. ¶ 13. The Complaint does not allege any acts by Kony in Minnesota. Therefore, this Court should find that it does not have personal jurisdiction over Kony even if this Court finds that Black Horse is subject to personal jurisdiction.

**B. Plaintiffs' Complaint Shall Be Dismissed for Failure To State A Claim**

If this Court were to determine that Kony is subject to personal jurisdiction, which it should not, it would be proper to next consider whether Plaintiffs have failed to make a claim pursuant to Rule 12(b)(6). *See Johnson v. Woodcock*, 444 F.3d 953, 954 n.2 (8th Cir. 2006) ("Because we hold that the district court lacked personal jurisdiction, we do not reach the merits of Johnson's Lanham Act claim. We are not empowered to issue opinions on moot questions or to declare rules of law that do not affect the case before us.").

In reviewing a motion to dismiss, the Court must accept all the plaintiff's

factual allegations as true and draw all inferences in the plaintiff's favor, but the Court is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (The court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

## 1. Counts I–III Fail To Adequately Plead Trade Secret Misappropriation Under the DTSA and MUTSA.

It is appropriate to analyze the dismissal of the Plaintiffs' misappropriation claims—Count I under the federal Defend Trade Secrets Act ("DTSA") and Count III under Minnesota Uniform Trade Secrets Act ("MUTSA")—together because the statutes share functionally equivalent definitions of "trade secret" and "misappropriation." *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1017 n.1 (8th Cir. 2020) (analyzing Minnesota Uniform Trade Secrets Act and DTSA together because parties did not identify any differences); *Prime Therapeutics LLC v. Beatty*, 354 F. Supp. 3d 957, 967 (D. Minn. 2018). If Counts I and III are dismissed under Rule 12(b)(6), Count II (civil conspiracy) must also be dismissed since "a civil conspiracy claim is merely a vehicle for asserting vicarious or joint and several liability," and hence is "dependent upon a valid underlying tort claim." *Carlson v. A.L.S. Enters.*, 2008 U.S. Dist. LEXIS 3981, at *15 (D. Minn. Jan. 18, 2008); *Sick, Inc. v. Motion Control Corp.*, Civ. No. 01-1496, 2003 WL 21448864,

at *10 (D. Minn. June 19, 2003) (citations omitted). *Accord Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1070 (D. Minn. 2003).

"To demonstrate misappropriation of trade secrets, [plaintiff] must show, among other things, the existence of a protectable trade secret and misappropriation of that trade secret." *Ahern Rentals, Inc. v. EquipmentShare.com*, Inc., 59 F.4th 948, 955 (8th Cir. 2023). *See also TE Connectivity Networks, Inc. v. All Sys. Broadband, Inc.*, No. 13-cv-1356 (ADM/FLN), 2013 WL 6827348, at *3 (D. Minn. Dec. 26, 2013) (providing a plaintiff company must describe their trade secrets with more than "conclusory statements," and with "sufficient information to infer more than a mere possibility of misconduct").

The DTSA defines "trade secret" as information that the owner has taken reasonable measures to keep secret and that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

The DTSA defines "misappropriation" as the "acquisition . . . by improper means," "disclosure," or "use" of another's trade secret by someone who "at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret" or "derived from or through a person who owed a duty

to the person seeking relief to maintain the secrecy of the trade secret." 18 U.S.C. § 1839(5).

   a)   **Plaintiffs failed to plausibly allege the existence of a trade secret.**

To adequately plead the "existence" element, a plaintiff must "define its alleged trade secrets with sufficient specificity." *Prime Therapeutics LLC v. Beatty*, 354 F. Supp. 3d 957, 967 (D. Minn. 2018). Additionally, a plaintiff must "set forth facts showing that the information had independent economic value due to its secrecy, was not readily ascertainable by others, and that [the plaintiff] took efforts to maintain its secrecy." *Hot Stuff Foods, LLC v. Dornbach*, 726 F. Supp. 2d 1038, 1044 (D. Minn. 2010). Merely stating that the information is confidential is insufficient. *Id*.

Plaintiffs' Complaint described the purported trade secret as "[t]hose trade secrets included (but were not limited to) substantial elements of the manners and means to fabricate Plaintiffs' products effectively and economically." Compl. ¶ 45. The generic, lacking-in-details manner of description is comparable to the allegations at issue in *Hot Stuff Foods*, 726 F. Supp. 2d at 1044, which alleged that defendant had "access to confidential information concerning its business plans, pricing, margins and sales strategies." *Id.*

Moreover, as in *Hot Stuff Foods*, Plaintiffs provided no explanation for their conclusory statements that the information had independent economic value due to

its secrecy and was not readily ascertainable by others. Compl. ¶¶ 44, 57, 77. Plaintiffs' allegations that purported trade secrets "were not readily known" and "provided Plaintiffs with a competitive advantage," *see id*. ¶ 44, are no better than the conclusory statements found to be insufficient in *Hot Stuff Foods*. 726 F. Supp. 2d at 1044.

Therefore, this Court should follow *Hot Stuff Foods,* conclude that the Complaint lacks the factual content necessary for the court to reasonably infer the existence of trade secrets, and dismiss Plaintiffs' trade secret claims for failure to adequately plead the existence of a trade secret.

### b) Plaintiffs also failed to plausibly allege misappropriation.

Stripping away the threadbare allegations reciting legal conclusions, the only remaining factual allegations that could support Plaintiffs' trade secrets misappropriation claims is that Lucas—a former employee of Plaintiffs—stole Plaintiffs' trade secrets. Compl. ¶¶ 36–39.

The Complaint provides two sets of facts that purportedly support the accusations involving Lucas. The first set of facts is that Lucas is the named inventor of U.S. Patent No. D924,434 (the "'434 Patent") assigned to Kony. Compl. ¶ 42. But the Complaint provides no explanation how the '434 Patent is relevant to Plaintiffs' claims. The ambiguity created by Plaintiffs should not be construed in their favor. If Plaintiffs mean to say that '434 Patent relates to Plaintiffs' trade secrets, then

Plaintiff must explicitly plead it; if it does not, then hiring an employee already terminated by Plaintiffs is neither tortious nor otherwise unlawful. Compl. ¶ 41. Nor does Kony's application for a patent before the USPTO create a reasonable inference of "misappropriation" of Plaintiffs' trade secrets. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation omitted).

The second set of facts alleged is that Kony "used Plaintiffs' trade secrets to manufacture and sell products" on several online platforms. Compl. ¶¶ 48–51. Here, Plaintiffs no doubt possess information about the existence of their own trade secrets to the extent they exist in Kony's products. Plaintiffs specifically allege that products sold through "Aborder," "Amazon," "Chewy," and "PetSmart" have "used Plaintiffs' trade secrets." Compl. ¶¶ 48–50, 60. But Plaintiffs fail to identify any particular products that allegedly incorporate Plaintiffs' purported trade secrets or explain how their purported trade secrets are reflected in those products. Therefore, Plaintiffs have failed to satisfy the notice pleading standards. Counts I–III must be dismiss as they "amounted to pure speculation." *Id.* at 955.

### c)  Plaintiffs' common law claim must be dismissed in any event.

Count III also asserts a Minnesota state common law trade secret claim. Compl. ¶ 75. The common law claim should be dismissed regardless of any of

Counts I–III survives, because MUTSA preempts state common law causes of action. Minn. Stat. § 325C.07 (MUTSA "displace conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.").

As the MUTSA and common law trade secret claims are based on the same nucleus of operative facts, the common law claim is preempted as a matter of law. Plaintiffs have no remedy under common law in any event, regardless of whether its MUTSA claim survives dismissal. *See Micro Display Sys., Inc. v. Axtel, Inc.*, 699 F. Supp. 202, 204 (D. Minn. 1988) (holding that "a separate cause of action for misappropriation of trade secrets is now displaced and such actions must be brought under the MUTSA").

## 2. Count II Fails To Allege Any Conscious Agreement or Coordinated Conduct.

Plaintiffs' civil conspiracy claim against all Defendants (Count II) is an impermissible "shotgun pleading"—a calculated attempt to transform the routine, lawful conduct of separate entities into a fabricated conspiracy through deliberate obfuscation. By bundling unrelated business activities of distinct corporations occurring at different times, Plaintiffs seek to create a sense of wrongdoing without any explicit pleading of conscious agreement or coordinated conduct. This tactical gamesmanship violates fundamental pleading standards, and has no place in federal court. *See e.g., Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018)

(observing that shotgun pleadings "employ[] a multitude of claims and incorporates by reference all of its factual allegations into each claim, making it nearly impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief."); *Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011) (concluding that by filing a shotgun pleading, "plaintiffs have essentially coughed up an unsightly hairball of factual and legal allegations, stepped to the side, and invited the defendants and the Court to pick through the mess and determine if plaintiffs have pleaded a viable claim or two.").

A Minnesota civil conspiracy claim "is merely a means for asserting vicarious or joint and several liability." *Am. Comput. v. Jack Farrell Implement Co.*, 763 F. Supp. 1473, 1489 (D. Minn. 1991). Plaintiffs must allege facts to show Defendants "reached some agreement and conspired together to injure the plaintiff." *Gometz v. Culwell*, 850 F.2d 461, 464 (8th Cir. 1988) (internal citation and quotation omitted); *see also Marty H. Segelbaum, Inc. v. MW Capital, LLC*, 673 F. Supp. 2d 875, 880–81 (D. Minn. 2009). "A plaintiff cannot merely incant the words 'conspiracy' or 'agreement' in order to adequately plead conspiracy." *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 839 (D. Minn. 2012) (dismissing with prejudice civil conspiracy claim); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 447 (2007) (concluding that "a conclusory allegation of agreement at some unidentified

point does not supply facts adequate to show illegality.").

Plaintiffs' Complaint is bereft of allegations that Defendants reached an agreement to commit a tort. Instead, the allegations pertain to distinct conduct occurring at different times by separate entities that, aside from alleged common control, have no apparent connection. The Complaint attempts to connect the following transactions into a conspiracy: (1) that Black Horse and Plaintiffs had a business cooperation, Compl. ¶¶ 30–35; (2) that Lucas worked for Defendants after Lucas's relationship with Plaintiffs ended and allegedly stole Plaintiffs' trade secrets for Defendants' benefit, Compl. ¶¶ 39–44; and (3) that Defendants "used Plaintiffs' trade secrets to manufacture and sell products" on several online platforms, Compl. ¶¶ 48–51. The allegation that Defendants "used Plaintiffs trade secrets" is merely a threadbare recitation of legal conclusions which should be disregarded. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (concluding that the court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.").

After stripping away the conclusory allegations, no reasonable inference of agreement or coordination between Black Horse and Kony can be drawn from these allegations. Negotiating and signing business contracts, hiring an unemployed person, applying for a patent, and selling products online are all routine business activities. It is well-established that to plead conspiracy, plaintiffs must plead

sufficient non-conclusory facts to support a reasonable inference of agreement. *Twombly*, 550 U.S. at 554 (stating that "proof of a § 1 conspiracy must include evidence tending to exclude the possibility of independent action."); *Motley v. Homecomings Fin. LLC*, 557 F. Supp. 2d 1005, 1009 n.1 (D. Minn. 2008) (concluding *Twombly* standard is not limited to claims alleging antitrust conspiracies). Because the Complaint includes no factual allegations that plausibly suggest that Defendants agreed to engage in tortious conduct and took concerted actions to achieve that purpose, Plaintiffs' civil conspiracy claim should be dismissed.

## 3. Count VI Fails To State A Claim for Trademark Infringement Under the Lanham Act.

The Complaint does not plausibly allege each element necessary to recover under 15 U.S.C. §§ 1114, 1125(a). Section 1114 prohibits the unauthorized use of registered trademarks or service marks in a manner that is likely to cause consumer confusion. Section § 1125(a) is, however, broader than § 1114 and protects unregistered marks as well. And § 1114 requires that the infringing use of a mark be "in connection with the sale" of goods or services; § 1125(a) merely requires that the infringing use of a mark be "in connection with any goods or services." Otherwise, the elements of claims brought under the two sections are similar. *Phoenix Entertainment Partners, LLC v. Lapadat*, 123 F. Supp. 3d 1114, 1119 (D. Minn. 2015).

Section 1114 prohibits (1) the "use in commerce" of any unauthorized trademark; (2) "in connection with the sale, offering for sale, distribution, or advertising of any goods or services;" (3) where "such use is likely to cause confusion, or to cause mistake, or to deceive. . . ." 15 U.S.C. § 1114(1)(a). Section 1125(a) of the Lanham Act prohibits (1) the "use[ ] in commerce" of any false designation, description, or representation; (2) "in connection with any goods or services;" (3) where such use is "likely to cause confusion, or to cause mistake, or to deceive as to . . . the origin, sponsorship, or approval of [the infringer's] goods, services, or commercial activities by another person. . . ." 15 U.S.C. § 1125(a)(1)(A).

The Complaint's trademark infringement allegations fall short for a number of reasons. The only alleged infringing Kony product identified in the Complaint is the "Top Paw Deluxe Shade Playpen sold on PetSmart." Compl. ¶ 111. But that allegation falls short because the Complaint does not allege how the identified Top Paw-brand playpen allegedly sold by PetSmart relates to Kony and the "Top Paw Deluxe Shade Playpen" name itself does not include the term Regalo or any term that is confusingly similar.

Moreover, there is a clear disconnect between the Complaint's allegation, on the one hand, that "Defendant Kony's *gate products*" are not genuine Regalo products and not approved by Regalo, Compl. ¶ 112 (emphasis added), and its allegation, on the other hand, that Kony baby gate products bear "Regalo's name and

trademark REGALO prominently stamped **on the adjustment strings found on the product's plastic cap**," *id*. ¶ 111 (emphasis added). The Complaint does not allege that **the adjustment strings** are not genuine Regalo products or indicate how, accepting Plaintiffs' allegations that the "Top Paw Deluxe Shade Playpen" included the Regalo mark on the adjustment strings as true, a consumer observing the playpen product would conclude the Regalo mark applies to the entire product, when the product is admittedly a Top Paw-brand product. A consumer observing the YKK® mark on a Nike®-brand sweatshirt's zipper certainly would not conclude that YKK is the source of the sweatshirt or that YKK approved the specific sweatshirt. Similarly, a consumer observing "REGALO" on a Top Paw-brand's playpen's adjustment strings would not conclude that Regalo is the source of the playpen or that Regalo approved the playpen.

The exhibit stamped "Exhibit D," Doc 1-4, is unhelpful. It is unclear how the depicted image relates to this case. The Complaint does not mention Exhibit D at all. The "Exhibit D" marking suggests it relates to a different case. There is no product depicted in the image. It is unclear what product the image relates to. The Complaint is devoid of any facts supporting that Kony has manufactured, sold, offered for sale, shipped, imported, or otherwise had any connection with whatever is depicted in the image identified in Exhibit D. Moreover, what is shown does not indicate in any way that a consumer would be confused as to the source or approval of a Top Paw-brand

playpen or any Kony playpen.

The disjointed nature of Plaintiffs allegations raises a serious concern on whether a reasonable investigation had been conducted by Plaintiffs' counsel before filing the Complaint. Kony reserves the right to file a motion for sanction under Rule 11.

### III.  <u>CONCLUSION</u>

For the foregoing reasons, Kony respectfully requests that the motion to dismiss be GRANTED.


September 19, 2025                                  Respectfully submitted.

                                                   By: <u>s/ J. Benjamin Bai</u>

                                                   J. Benjamin Bai (*pro hac vice*)
                                                   Texas Bar No. 24001675
                                                   King & Wood Mallesons LLP
                                                   500 Fifth Avenue, 50th Floor
                                                   New York NY 10110
                                                   Telephone: (212) 319-4755
                                                   E-mail: <u>benjamin.bai@cn.kwm.com</u>

                                                   Haolu Feng (*pro hac vice*)
                                                   D.C. Bar No. 90001026
                                                   King & Wood Mallesons
                                                   17th Floor, One ICC, Shanghai ICC
                                                   999 Middle Huai Hai Road, Xuhui
                                                   District
                                                   Shanghai 200031 China
                                                   Telephone: (206) 499-2956
                                                   Email: <u>harry.feng@cn.kwm.com</u>

                                                   Clinton L. Conner, MN SBN 0396192
                                                   CONNER IP
                                                   729 N. Washington Ave., Suite 600

Minneapolis, MN 55401
(612) 474-3581
conner.clint@connerip.com

*Attorneys for Defendant*
*Ningbo Kony Metal Products Co., Ltd.*