## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Regalo International, LLC, et al., | No. 25-cv-0361 (KMM/DLM) |
| **Plaintiffs,** | |
| vs. | **FIRST AMENDED COMPLAINT** |
| Ningbo Black Horse Tourism Products, Co., Ltd., et al., | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

---

COME NOW, Plaintiffs Regalo International, LLC ("Regalo") and Carlson Pet Products, Inc. ("Carlson") (collectively "Plaintiffs"), by and through their undersigned counsel, and bring this First Amended Complaint against Defendants Ningbo Black Horse Tourism Products, Co., Ltd. ("Black Horse") and Ningbo Kony Metal Products Co., Ltd. ("Kony") (collectively "Defendants"). In support thereof, Plaintiffs state as follows.

<u>NATURE OF THE ACTION</u>

1.    As set forth in more detail below, this action arises out of an deceptive scheme of knowing violations of confidentiality agreements and wholesale theft of Plaintiffs' intellectual property by their former manufacturer in an effort to exploit Plaintiffs' confidential, proprietary information and trade secrets, deliberately trade upon their reputation and goodwill, and cause substantial injury and damage to them, while Defendants reap the full benefits – tangible and intangible – from the sales of competing products.

2.    Accordingly, Plaintiffs bring this action for:

a.    Misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1832 *et seq.*, the Minnesota Uniform Trade Secrets Act ("MUTSA"), Minn. Stat. § 325C *et seq*;

b.    Civil conspiracy;

c.    Breach of contract;

d.    Fraudulent inducement;

e.    Trademark infringement under the Lanham Act and common law;

f.    Deceptive trade practices in violation of the Minnesota Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. § 325D.44; and

g.    Unfair competition under common law.

3.    Plaintiffs seek injunctive relief, compensatory damages, an accounting of Defendants' profits, punitive damages, recovery of their costs and attorney fees, and all other available relief arising from Defendants' willful, malicious, and unlawful acts.

<u>PARTIES</u>

4.     Regalo is a Minnesota limited liability company with a primary place of business located at 3200 Corporate Center Drive, Suite 100, Burnsville, Minnesota 55306.

5.    Carlson is a Minnesota corporation with a primary place of business located at 3200 Corporate Center Drive, Suite 100, Burnsville, Minnesota 55306.

6.    Black Horse is a business entity organized under the laws of China having a place of business at Room 101, 1st Floor, Building 2, No. 315, Guanshen North Road, Binhai Economic Development Zone, Cixi, Zhejiang Province, China.

7.      On information and belief, Black Horse is engaged in business of manufacturing barrier gate products and in the import and export of such goods.  Black Horse states that it "focuses on the manufacturing, processing, and repair of metal products, pet supplies, plastic products, textile goods, and tourism products."  (ECF No. 20 at 2.)

8.      A Unified Social Credit Code ("USCC") is an 18-digit unique identifier issued by the Chinese government to identify all legally registered organizations and companies in China.

9.      Black Horse has a USCC of 913302115994612917.

10.     Chinese government filings indicate that Black Horse has a registered capital of 5 million RMB and two shareholders, Li Xiaolin owning 51%, and Lin Guowen owning 49%.

11.     Chinese government filings indicate that Li Xiaolin is Black Horse's general manager and legal representative.

12.     Kony is a business entity organized under the laws of China having a place of business at No. 315 Guanshen North Road, Binhai Economic Development Zone, Cixi City, Zhejiang, China.

13.     Kony has a USCC of 913302113169807469.

14.     Chinese government filings indicate that Kony has a registered capital of 1 million RMB and two shareholders, Ningbo Hongyou Information Technology Co., Ltd. ("Hongyou") owning 90% and Lin Guowen owning 10%.

15.     Chinese government filings indicate that Li Xiaolin is Kony's executive director, manager, and legal representative.

16.     On information and belief, Kony is engaged in business of manufacturing barrier gate products and in the import and export of such goods.  On its website, Kony touts itself as a "leading enterprise specialized in manufacturing, marketing and R&D of children safety protection [and] pet supplies."

17.     Hongyou is a business entity organized under the laws of China having a place of business at No. 315, Guanshen North Road, Binhai Economic Development Zone, Cixi, Zhejiang Province, China.

18.     Hongyou has a USCC of 91330282MADE0NCM2X.

19.     Chinese government filings indicate that Hongyou was established on March 29, 2024.

20.     Chinese government filings indicate that Hongyou has a registered capital of 1 million RMB and two shareholders, Li Xiaolin owning 51% and Lin Guowen owning 49%.

21.     Chinese government filings indicate that Li Xiaolin is Hongyou's executive director, manager, and legal representative.

22.     Chinese government filings indicate that Hongyou and Lin Guowen are shareholders of Ningbo Shengtian Smart Home Technology Co., Ltd. ("Smart Home"), with Hongyou owning 90% and Lin Guowen owning 10%.

23.     Smart Home is a Chinese business entity having a place of business at No. 315, Guanshen North Road, Ningbo City, Cixi Binhai Economic Development Zone, Zhejiang Province, 315313, China.

24.     Smart Home has a USCC of 91330201MA2AFBA13W.

25.    On information and belief, Li Xaolin is an executive and director with Black Horse, Kony, Hongyou, and Smart Home.

26.    On information and belief, Lin Guowen is an executive and director with Black Horse, Kony, Hongyou, and Smart Home.

27.    On information and belief, Li Xaolin is Biao Lin's wife.

28.    On information and belief, Biao Lin is an executive and director with Black Horse, Kony, Hongyou, and Smart Home.

29.    On information and belief, Biao Lin, Li Xaolin, and Lin Guowen own, extensively control, direct, are actively involved in, and/or are responsible for all of the corporate and commercial activities of Defendants, including the complained of acts alleged herein.

30.    On information and belief, Biao Lin, Li Xaolin, and Lin Guowen own, extensively control, direct, are actively involved in, and are responsible for all of the corporate and commercial activities of Hongyou and Smart Home.

31.    On information and belief, Biao Lin, Li Xaolin, and Lin Guowen extensively control, direct, are actively involved in, and are responsible for the manufacture, importation, marketing, and sale of Defendants' barrier gate products derived from Plaintiffs' intellectual property and trade secrets at issue in this case.

32.    On information and belief, there is an indistinguishable unity of interest, ownership, purpose, and conduct that there are no separate personalities among Black Horse, Kony, Hongyou, and Smart Home.  Black Horse, Kony, Hongyou, and Smart Home effectively have acted as, and thus are, a single business enterprise responsible for the manufacture,

importation, marketing, and sale of the barrier gate products derived from Plaintiffs' intellectual property and trade secrets at issue in this case.

33.    On information and belief, Defendants together with Biao Lin, Li Xaolin, Lin Guowen, Hongyou, and Smart Home are the past and present controlling forces behind the concerted effort to manufacture, import, market and sell barrier gate products derived from Plaintiffs' intellectual property and trade secrets, to usurp Plaintiffs' market share, goodwill and reputation, and cause substantial injury and damage to Plaintiffs as described herein.

<u>JURISDICTION AND VENUE</u>

34.    This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

35.    This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) in that the Plaintiffs are citizens of a State and Defendants are citizens or subjects of a foreign state and the amount in controversy exceeds $75,000, exclusive of interest and costs.

36.    This Court has supplemental jurisdiction over Plaintiffs' state statutory and common law claims under 28 U.S.C. § 1367 in that the pendent claims raised herein are integrally related and intertwined with the federal claims raised herein.

37.    The Court has personal jurisdiction over Defendants. Black Horse has consented by contract to the Court's jurisdiction. Furthermore, the present claims arise directly from Black Horse's voluntary and purposeful business relationship with Plaintiffs, a relationship that Black Horse itself initiated and created. Black Horse voluntarily and purposefully engaged in business with Plaintiffs to manufacture certain products for them during which Black Horse would inter alia directly send commercial documents such invoices, packing lists,

and ocean bills of ladings directly to Plaintiffs' offices in Minnesota upon shipment of purchase orders, and Plaintiffs would wire payment for those shipments from Minnesota to Black Horse.

38.    In addition, together with and through their agents and affiliates, Defendants have been and are engaged in the business of manufacturing, marketing, and distributing inter alia barrier gate products derived from Plaintiffs' intellectual property and trade secrets.  They target the United States, including the State Minnesota, and directly and/or indirectly make, import, distribute, market, offer to sell and/or sell these barrier gate products in the United States and in this State, and otherwise purposefully direct their activities to this State in connection with these products.  Defendants conduct this activity by manufacturing, importing, and distributing these products into the United States and marketing, offering to sell, and selling these products with, by  and through inter alia their agent and affiliate Smart Home, which owns and operates a fully interactive commercial Internet e-commerce storefront operating on Amazon.com Inc.'s ("Amazon") well-known online retail marketplace and ecommerce platform.  Smart Home has conducted business with consumers located in this State for the sale and shipment of barrier gate products derived from Plaintiffs' intellectual property and trade secrets into this State.

39.    Defendants further offer to place and have placed barrier gate products derived from Plaintiffs' intellectual property and trade secrets into the stream of commerce, with the knowledge or understanding that these products will be sold or used in this State.  As such, Defendants expect their actions to have consequences within this State.

40.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

<u>COMMON ALLEGATIONS</u>

41.    In or about 1997, Regalo was founded by Mark and Wendy Flannery and remains to this day, a family owned and operated business.  Initially, Regalo marketed, sold, and distributed high-quality juvenile products.  Since its inception, Regalo's commitment to innovation, quality and affordability has in large part fueled its tremendous growth in the infant, toddler, and juvenile products market, including inter alia baby gates, pet gates, and furniture products.

42.    In or about 2008, Carlson was formed to market, distribute, and sell various high-quality pet products.

43.    For more than twenty-five years, Plaintiffs have grown to be world leaders in the production and distribution of high-quality baby and pet products including the barrier gate products at issue in this matter.

44.    Plaintiffs have invested substantial resources in the development of their products and establishing their reputation among consumers as having industry-leading barrier gate products of the highest quality, safety, and performance.  As a result of this investment, their substantial advertising and sales of their products, and the maintenance of premium quality standards relating thereto, Plaintiffs' barrier gate products have become widely and favorably accepted and recognized by consumers as products of the highest quality and reputation. For example, Plaintiffs' barrier gate products have been designated by Amazon as "Best Seller," "Overall Pick," or "Amazon Choice" and having obtained hundreds of thousands of highly favorable Amazon reviews.

45.     Plaintiffs' ongoing efforts and the innovations resulting therefrom have given rise to a substantial amount of intellectual property.  Plaintiffs, through long and extensive research and development, and the expenditure of a considerable amount of time and effort and large sums of money, have developed a substantial number of commercially valuable trade secrets and confidential, proprietary, scientific, technical, and business information concerning the research, development, formulation, processing, production, and marketing of barrier gate products, and Plaintiffs have embodied this information in their written materials, drawings, processes, procedures, products, business plans and forecasts, lists of suppliers and customers, and the like, and this information constitutes valuable commercial assets of Plaintiffs.  This information was and is not known to the general public and have provided Plaintiffs with a competitive advantage.  Plaintiffs have kept this information secret, with restrictions on their further use and disclosure by all those to whom this information has become known.

46.     For years, Plaintiffs have worked with various factories in China to manufacture their products.  One of those factories was located in Ningbo, China. However, that facility did not have the ability to do the welding required for the production of many of Plaintiffs' products.  At the time, Biao Lin, also known as "Bill," was the contractor providing welding services to that factory so that it could complete the production of Plaintiffs' products.

47.     At some point, Biao Lin initiated contact with Plaintiffs and suggested to them that with their help and support, he could set up a factory for the fabrication of the Plaintiffs' products.

48.    Prior to that time, Biao Lin had never built or operated a factory. Nor had Biao Lin ever engaged in the manufacture of any metal products, including but not limited to barrier gate products.

49.    In or about 2014-2016, Plaintiffs agreed to assist Biao Lin in setting up a factory to manufacture products, such as barrier gate products, for Plaintiffs. Over the next few years, Plaintiffs spent significant time working with Biao Lin and Black Horse in setting up Black Horse's factory at Plaintiffs' cost and expense and allowing Black Horse to manufacture products for Plaintiffs using *inter alia* the specifications, means and methods provided by Plaintiffs.

50.    During this time, confidential and trade secret information concerning the research, development, formulation, processing, production, and marketing of barrier gate products was provided and entrusted to Black Horse in its manufacture of products for Plaintiffs. Black Horse and its principals – including Biao Lin, Li Xaolin, Lin Guowen – knew that this information was confidential and that it was considered to comprise trade secrets of Plaintiffs, and each knew that this information was not to be used except for the manufacture of Plaintiffs' products or disclosed to others outside of Black Horse.

51.    On or about January 15, 2016, Regalo and Black Horse entered into a Non-Disclosure and Confidentiality Agreement. The agreement was executed by Biao Lin on behalf of Black Horse. A copy of that agreement is annexed as Exhibit A and is made part hereof. The agreement provided terms under which Black Horse would manufacture products for Plaintiffs using the confidential and trade secret information provided by Plaintiffs.

52.     On or about January 15, 2016, Carlson and Black Horse entered into a Non-Disclosure and Confidentiality Agreement.  The agreement was executed by Biao Lin on behalf of Black Horse.   A copy of that agreement is annexed as Exhibit B and is made part hereof. The agreement provided terms under which Black Horse would manufacture products for Plaintiffs using the confidential and trade secret information provided by Plaintiffs.

53.     Prior to and since the execution of the aforementioned Non-Disclosure and Confidentiality Agreements, Plaintiffs provided Black Horse with substantial confidential information and trade secrets of Plaintiffs in the development, formulation, processing, and production Plaintiffs' products, including barrier gate products, up to and through Plaintiffs' termination of Black Horse in or around August 2023.

54.     Ye Jian Lin, also known as "Lucas," was employed by Plaintiffs during the relevant time and was one of individuals that directly assisted Black Horse to set up its factory to manufacture Plaintiffs' products.  Prior to his work with Plaintiffs, Ye Jian Lin had no experience in the development, formulation, processing, and production of barrier gate products.  During his employment with Plaintiffs, Ye Jian Lin became particularly knowledgeable in and worked day to day with, the confidential information and trade secrets of Plaintiffs in the development, formulation, processing, and production Plaintiffs' products, including barrier gate products.   During this time, the aforementioned trade secret and confidential information was entrusted to Ye Jian Lin in the performance of his duties.  Ye Jian Lin knew that this information was confidential, and it was considered to comprise trade secrets of Plaintiffs.  He knew that this information was not to be used or disclosed for purposes other than Plaintiffs' business and the manufacture of their products.  During this time, Black

Horse also knew that Ye Jian Lin was particularly knowledgeable in Plaintiffs' confidential information and trade secrets in the development, formulation, processing, and production Plaintiffs' products, including barrier gate products.

55.    Having gained access to Plaintiffs' confidential information and trade secrets concerning their barrier gate products, including Plaintiffs' proprietary designs, processes, methods, and techniques to produce barrier gate products, Plaintiffs recently have learned that Defendants have been misusing Plaintiffs' confidential information and trade secrets for their own benefit to produce, import, distribute, and sell for themselves substantially identical barrier gate products to compete with Plaintiffs' products in the United States, including products retailed and sold by Chewy and PetSmart.  In fact, Defendants' products sold at PetSmart bore Regalo's registered trademark on them.  These products were obviously fabricated by Defendants, or someone acting on their behalf, using tooling previously provided by Plaintiffs to Black Horse.

56.    On information and belief, prior and subsequent to Biao Lin initiating contact with Plaintiffs to set up a factory for the fabrication of the Plaintiffs' products, Black Horse and its principals began preparations for competing with Plaintiffs. Black Horse and its principals proceeded with a scheme of intentionally and purposefully misappropriating Plaintiffs' trade secrets and confidential information and of using this information for Black Horse and its principals' commercial advantage in order that they could compete with Plaintiffs in the field of barrier gate products and would not have to incur the expense and spend the time necessary to research and develop their own products, technology, processes, procedures and the like, for the manufacturing and sale of barrier gate products in competition

with Plaintiff.  In this regard, and on information and belief, Black Horse's principals, including *inter alia* Biao Lin, Li Xaolin, and Lin Guowen, formed Kony and Smart Home to conceal their misappropriation of Plaintiffs' trade secrets and confidential information to manufacture, import, market, and distribute barrier gate products in competition with Plaintiffs, under differently named entities.  Compounding their unlawful activities, Black Horse and its principals engaged in a scheme to induce key employees to steal Plaintiffs' trade secrets and confidential information for misuse by Black Horse, its principals, and affiliates.

57.    Plaintiffs have since learned that after Ye Jian Lin resigned from Plaintiffs, he then went to work for Black Horse.  In addition, Plaintiffs learned that Black Horse and its principals were paying Ye Jian Lin to steal Plaintiffs' trade secrets and confidential information for use by Black Horse and its principals and affiliates, while Ye Jian Lin was employed by Plaintiffs.

58.    When Ye Jian Lin left the employ of Plaintiffs, he was possessed of Plaintiff's valuable trade secrets and confidential information which had been revealed to him in confidence and in trust while employed by Plaintiffs.  On information and belief, Black Horse, its principals and Ye Jian Lin breached and conspired among themselves and with others to breach that confidence and trust they each had with Plaintiffs as to their valuable trade secrets and confidential information, and without Plaintiffs' consent, have disclosed, misused, and are disclosing and misusing Plaintiffs' trade secrets and confidential information for Defendants' own benefit.

59.    On information and belief, Black Horse negotiated and executed the Non-Disclosure and Confidentiality Agreement with no intention to honor them.  Instead, on

information and belief, Black Horse sought to lull Plaintiffs into a false sense of security and to otherwise conceal the fact that Black Horse and its principals were engaging in the wholesale theft of intellectual property from Plaintiffs.

60.    As a direct and proximate consequence of Defendants' complained-of acts, Plaintiffs have been injured in their business and property, causing Plaintiff to suffer compensatory damages and irreparable harm.

61.    Defendants' conduct, including as alleged in this Complaint, has been done in furtherance of their own private interests, and has been performed knowingly, willfully, and deliberately and with conscious and callous indifference to the consequences to Plaintiffs.

COUNT I
MISAPPROPRIATION OF TRADE SECRETS (DTSA)
(ALL DEFENDANTS)

62.    Plaintiffs incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.

63.    Defendants, alone or in active concert with each other and/or others, have engaged in acts that compromise misappropriation of Plaintiffs' trade secrets in violation of the DTSA.

64.    Plaintiffs' confidential, proprietary, scientific, technical, and business information concerning the research, development, formulation, processing, production, and marketing of barrier gate products, including but not limited to the information set forth in Paragraphs 45, 49-50, and 53-55, constitute trade secrets under the DTSA. This information resulted from Plaintiffs' significant investment of time, effort, money and other resources. This information was and is not known to the general public.  Plaintiffs have taken reasonable

14

measures to keep this information secret, with restrictions on their further use and disclosure by all those to whom this information has become known. This information derives independent economic value from not being generally known to, or readily ascertainable by proper means by, another who can obtain an economic value from the disclosure or use of the information. Moreover, Plaintiffs derive substantial value from the barrier gate products created using this information.

65.    Defendants have misappropriated Plaintiffs' trade secrets without express or implied consent in violation of DTSA. By virtue of Defendants' acts, herein above pleaded, Defendants have unlawfully acquired and used Plaintiffs' trade secrets without authorization and for the benefit of Defendants and to the detriment of Plaintiffs.

66.    Defendants knew or should have known that Plaintiffs' designs, drawings, processes, methods, and techniques to produce barrier gate products (1) are confidential; (2) were acquired under circumstances giving rise to a duty to maintain their secrecy or restrict their use; (3) were developed by Plaintiffs at great expense and effort; (4) were maintained as confidential and are not generally available to the public or Plaintiffs' competitors; (5) would provide significant benefit to a company seeking to compete with Plaintiffs; and (6) are critical to Plaintiffs' ability to conduct its business successfully.

67.    Defendants have misused and are continuing to misuse Plaintiffs' misappropriated trade secrets to produce, import, market, distribute, sell barrier gate products to the same class of customers, through the same channels of trade, in direct competition with Plaintiffs' barrier gate products.

68.     By virtue of Defendants' acts hereinabove pleaded, Defendants have obtained a "head start" and an unfair advantage in not having to incur the expense necessary to research and develop their own products, technology, processes, procedures and the like, for the manufacture and sale of barrier gate products in fair competition with Plaintiff.

69.     By virtue of Defendants' acts, hereinabove pleaded, Defendants have obtained business they could not otherwise obtain fairly on the open market.

70.     Defendants' acts hereinabove described are being committed knowingly, willfully, and deliberately, and with the intent, purpose and effect of procuring an unfair competitive advantage.

71.     As a direct and proximate result of Defendants' misappropriation of Plaintiffs' trade secrets, Plaintiffs have suffered and will continue to suffer injury in fact and actual damages, including lost business, market share, sales, revenue, and profits.

72.     As a result of Defendants' misappropriation of Plaintiffs' trade secrets, Plaintiffs have incurred substantial damages, such as loss of their trade secrets and confidential information and business expectancies, which has adversely affected their ability to conduct their business and control their goodwill and reputation, and Plaintiffs have sustained still further damages in an amount difficult to ascertain.  Unless restrained by this Court, Plaintiffs will continue to suffer such damage.

73.     Defendants' willful misappropriation of Plaintiffs' trade secrets and confidential information renders this case an exceptional case, justifying an increase in the damages to be awarded to Plaintiffs and reasonable attorneys' fees, in accordance with 18 U.S.C. § 1836(b)(3)(C) and (D).

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS (MUTSA)
## (ALL DEFENDANTS)

74.     Plaintiffs incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.

75.     Plaintiffs' confidential, proprietary, scientific, technical, and business information concerning the research, development, formulation, processing, production, and marketing of barrier gate products, including but not limited to the information set forth in Paragraphs 45, 49-50, and 53-55, constitute trade secrets under the MUTSA. This information resulted from Plaintiffs' significant investment of time, effort, money and other resources. This information was and is not known to the general public.  Plaintiffs have taken reasonable measures to keep this information secret, with restrictions on their further use and disclosure by all those to whom this information has become known.   This information derives independent economic value from not being generally known to, or readily ascertainable by proper means by, another who can obtain an economic value from the disclosure or use of the information.   Moreover, Plaintiffs derive substantial value from the barrier gate products created using this information.

76.     Defendants have misappropriated Plaintiffs' trade secrets without express or implied consent in violation of MUTSA.  By virtue of Defendants' acts, herein above pleaded, Defendants have unlawfully acquired and used Plaintiffs' trade secrets without authorization and for the benefit of Defendants and to the detriment of Plaintiffs.

77.     Defendants knew or should have known that Plaintiffs' designs, drawings, processes, methods, and techniques to produce barrier gate products (1) are confidential; (2)

were acquired under circumstances giving rise to a duty to maintain their secrecy or restrict their use; (3) were developed by Plaintiffs at great expense and effort; (4) were maintained as confidential and are not generally available to the public or Plaintiffs' competitors; (5) would provide significant benefit to a company seeking to compete with Plaintiffs; and (6) are critical to Plaintiffs' ability to conduct its business successfully.

78.    Defendants have misused and are continuing to misuse Plaintiffs' misappropriated trade secrets to produce, import, market, distribute, sell barrier gate products to the same class of customers, through the same channels of trade, in direct competition with Plaintiffs' barrier gate products.

79.    By virtue of Defendants' acts hereinabove pleaded, Defendants have obtained a "head start" and an unfair advantage in not having to incur the expense necessary to research and develop their own products, technology, processes, procedures and the like, for the manufacture and sale of barrier gate products in fair competition with Plaintiff.

80.    By virtue of Defendants' acts, hereinabove pleaded, Defendants have obtained business they could not otherwise obtain fairly on the open market.

81.    Defendants' acts hereinabove described are being committed knowingly, willfully, and deliberately, and with the intent, purpose and effect of procuring an unfair competitive advantage.

82.    As a direct and proximate result of Defendants' misappropriation of Plaintiffs' trade secrets, Plaintiffs have suffered and will continue to suffer injury in fact and actual damages, including lost business, market share, sales, revenue, and profits.

83.     As a result of Defendants' misappropriation of Plaintiffs' trade secrets, Plaintiffs have incurred substantial damages, such as loss of their trade secrets and confidential information and business expectancies, which has adversely affected their ability to conduct their business and control their goodwill and reputation, and Plaintiffs have sustained still further damages in an amount difficult to ascertain.  Unless restrained by this Court, Plaintiffs will continue to suffer such damage.

84.     Defendants' bad faith, willful, and malicious misappropriation of Plaintiffs' trade secrets and confidential information justifies an award to Plaintiffs of their reasonable attorneys' fees, in accordance with Minn. Stat. § 325C.04.

COUNT III
CIVIL CONSPIRACY
(ALL DEFENDANTS)

85.     Plaintiffs incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.

86.     Together and/or with their agents, affiliates and Ye Jian Lin, Defendants worked in combination to misappropriate Plaintiffs' trade secret and confidential information.

87.     Together and/or with their agents, affiliates and Ye Jian Lin, Defendants worked in combination to take possession of, exercise control over, and steal Plaintiffs' trade secret and confidential information without permission from Plaintiffs or justification.

88.     Together and/or with their agents, affiliates and Ye Jian Lin, Defendants worked in combination to deprive Plaintiffs of their lawful use and possession of their trade secret and confidential information.

89.     Together and/or with their agents, affiliates and Ye Jian Lin, Defendants worked in combination to interfere with Plaintiffs' business and expectation of economic advantage.

90.     Defendants' acts hereinabove described are unlawful and tortious.

91.     By working in combination to accomplish these acts, Defendants have conspired to commit the tortious acts hereinabove described.

92.     As a direct and proximate consequence of the Defendants' unlawful and improper actions, Plaintiffs have been injured in their business and property, causing Plaintiffs to suffer compensatory damages and irreparable harm.

COUNT IV
BREACH OF CONTRACT
(BLACK HORSE)

93.     Plaintiffs incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.

94.     The aforementioned Non-Disclosure and Confidentiality Agreements were valid, enforceable, and binding contracts between Plaintiffs and Black Horse.

95.     Plaintiffs dutifully and fully performed their obligations under the Non-Disclosure and Confidentiality Agreements at all times.

96.     Black Horse breached or otherwise failed to perform under the Non-Disclosure and Confidentiality Agreements and the implied covenant of good faith and fair dealing therein by, among other acts, wrongfully using and disclosing Plaintiffs' trade secret and confidential information, which Black Horse received from Plaintiffs and from third parties, such as Ye Jian Lin, that breached their obligations of confidentiality in providing such information

20

to Black Horse, for the purpose other than performing the Non-Disclosure and Confidentiality Agreements.

97.     Black Horse's breaches are without justification or privilege.

98.     As a direct and proximate result of Black Horse's breach, Plaintiffs have suffered and will continue to suffer injury in fact and actual damages, including lost business, market share, sales, revenue, and profits.  Plaintiffs also have incurred substantial damages, such as loss of their trade secrets and confidential information and business expectancies, which has adversely affected their ability to conduct their business and control their goodwill and reputation, and Plaintiffs have sustained still further damages in an amount difficult to ascertain.

COUNT V
FRAUDULENT INDUCEMENT
<u>(BLACK HORSE)</u>

99.     Plaintiffs incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.

100.     Black Horse made various representations to Plaintiffs, including but not limited to terms, obligations, covenants and conditions set forth in the Non-Disclosure and Confidentiality Agreements negotiated and executed by Biao Lin on behalf of Black Horse.

101.     Black Horse's representations were false or were otherwise made with no present intention to perform them.

102.     Black Horse's representations pertained to past or then-present facts.

103.     Defendant Black Horse's representations were material.

104.     The facts misrepresented by Black Horse were susceptible of knowledge.

105.    Black Horse knew that the facts were false or were asserted as if of Black Horse's own knowledge without knowing whether they were true or false.

106.    Black Horse intended to induce Plaintiffs to act or justify them in acting upon these facts.

107.    Plaintiffs were induced to act or justified in acting upon Black Horse's representations.

108.    Plaintiffs' actions were in reasonable reliance upon Black Horse's misrepresentations.

109.    Plaintiffs have suffered damages based upon Black Horse's misrepresentations.

110.    Plaintiffs' damages are attributable to Black Horse's misrepresentations and Black Horse's misrepresentations were the proximate cause of Plaintiffs' injuries.

COUNT VI
TRADEMARK INFRINGEMENT
(REGALO v. KONY)

111.    Plaintiffs incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.

112.    Regalo has been and now is extensively engaged in the business of manufacturing in interstate commerce a wide variety of barrier gate products and other juvenile products and since as early as 1996, has marketed barrier gate products under the trademark REGALO.  Such barrier gate products have been widely advertised and extensively offered under this mark throughout the United States, and the trademark REGALO has become,

through widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Regalo, its quality products and its goodwill.

113.    On July 7, 1998, the United States Patent and Trademark Office granted federal trademark registration to Regalo for the mark REGALO for "metal safety gates for babies, infants and children" as Certificate of Registration No. 2,171,783.  A true copy of this registration is annexed and is made a part hereof as Exhibit C.  This registration is in fully force and effect, is owned by Regalo, and has become incontestable under 15 U.S.C. § 1065.  Regalo uses the registration symbol ® on its goods and in advertising in association with its trademark.

114.    Notwithstanding Regalo's well-known and prior common law and statutory rights in the trademark REGALO, Kony, with at least constructive notice of Regalo's trademark rights under 15 U.S.C. § 1072 – if not actual notice via Black Horse, Biao Lin, Li Xaolin, and Lin Guowen prior dealings with Regalo – and long after Regalo established its rights in REGALO, adopted and used the trademark REGALO in interstate commerce, on and in connection with Kony's barrier gate products.  A copy of a photograph demonstrating an example of Kony's use of the trademark REGALO is annexed and is made a part hereof as Exhibit D.

115.    Kony's use of Regalo's federally registered trademark is likely to cause consumers to believe, contrary to fact, that Kony's barrier gate products originate with Regalo, are sponsored, licensed or otherwise approved by Regalo, are affiliated or connected to Regalo, or are associated with Regalo.

116.    Regalo has never authorized or consented to Kony's use of Regalo's trademark.

117.    Kony's use of the trademark infringes Regalo's trademark REGALO under § 32(1) of the Federal Trademark Act, 15 U.S.C. § 1114(1), and at common law.

118.    On information and belief, Kony has performed the complained of acts willfully, and with the knowledge of the infringement it would cause, and to appropriate and unfairly trade upon the goodwill in Regalo's trademark REGALO.

119.    By reason of Kony's acts alleged herein, Regalo has and will suffer damage to its business, reputation and goodwill, and Kony has and will enjoy benefits and profits to which it is otherwise not entitled, for which Regalo is entitled to relief at law.

120.    Unless enjoined by this Court, Kony will continue to infringe Regalo's trademark, thereby deceiving consumers and causing Regalo irreparable injury.  It would be difficult to ascertain the amount of compensation which could afford Regalo adequate relief for such continuing acts, and a multiplicity of judicial proceedings would be required. Regalo's remedy at law is not adequate to compensate it for injuries threatened.

COUNT VII
FALSE DESIGNATION OF ORIGIN
(REGALO v. KONY)

121.    Plaintiffs incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.

122.    As a cause of action and ground for relief, Regalo alleges that Kony has engaged in acts in violation of § 43(a) of the Federal Trademark Act, 15 U.S.C. § 1125(a).

123.    The designation REGALO adopted and used by Kony in the manner hereinabove alleged constitutes a false designation of origin within the meaning of § 43(a) of the Federal Trademark Act, 15 U.S.C. § 1125(a), which is likely to cause confusion, mistake or deception

as to the affiliation, connection, or association of Kony with Regalo, or as to the source, origin, sponsorship, or approval of Kony's barrier gate products by Regalo.

124.    The nature and probable tendency and effect of Kony's use of Regalo's name and trademark REGALO in the manner hereinabove alleged is to enable Kony to confuse or deceive consumers by misrepresenting the products offered for sale and sold bearing Regalo's name and trademark REGALO as sponsored, licensed and/or otherwise approved by, or are in some way connected or affiliated with Regalo.  Such conduct constitutes a false designation of origin in violation of § 43(a) of the Federal Trademark Act, 15 U.S.C. § 1125(a).

COUNT VIII
DECEPTIVE TRADE PRACTICES
(REGALO v. KONY)

125.    Plaintiffs incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.

126.    As a cause of action and ground for relief, Regalo alleges that Kony has engaged in deceptive trade practices in violation of the MDTPA, Minn. Stat. § 325D.44.

127.    Kony's adoption and use of Regalo's name and trademark REGALO in the manner hereinabove alleged causes caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of Kony's barrier gate products by Regalo.

128.    By reason of Kony's acts alleged herein, Regalo has and will suffer damage to its business, reputation and goodwill.  Kony's adoption and use of Regalo's name and trademark REGALO on and in connection with Kony's barrier gate products interfere with Regalo's ability to control the goodwill and reputation represented by Regalo's trademark in

Minnesota and within the United States.  Unless enjoined by this Court, Kony will continue to cause confusion, misunderstanding, or deception among consumers and cause Regalo irreparable harm and injury.

COUNT IX
UNFAIR COMPETITION
(REGALO v. KONY)

129.    Plaintiffs incorporate by reference and reallege the foregoing paragraphs as if fully set forth herein.

130.    As a cause of action and ground for relief, Regalo alleges that Kony has engaged in acts of unfair competition at common law.

131.    By virtue of Kony's acts, hereinabove pleaded, Kony has engaged in unfair competition, in violation of the common law of Minnesota.  Kony has engaged in conduct which is contrary to honest, industrial and commercial practice.

132.    Kony's acts, hereinabove pleaded, are calculated to procuring an unfair competitive advantage by misappropriating the valuable goodwill developed by Regalo at substantial effort and expense and represented by the distinctiveness of its name and trademark REGALO.

133.    Kony will continue to compete unfairly unless restrained by this Court.  As a result of Kony's unfair competition, Regalo will incur substantial damages and loss of goodwill and profits, will be unable to control their good reputation and will sustain still further damages in an amount difficult to ascertain.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully prays that judgment be entered in their favor and against Defendants on all Counts of this First Amended Complaint as follows:

1.      The Court enter judgment that:

a.      Defendants have misappropriated Plaintiffs' trade secrets and confidential information in violation of the DTSA and MUTSA by and through the acts complained of herein;

b.      Defendants have engaged in civil conspiracy by and through the acts complained of herein;

c.      Black Horse has breached the Non-Disclosure and Confidentiality Agreements with Plaintiffs by and through the acts complained of herein;

d.      Black Horse has engaged in fraudulent inducement by and through the acts complained of herein;

e.      Kony has infringed Regalo's trademark REGALO under § 32(1) of the Federal Trademark Act, 15 U.S.C. § 1114(1), and at common law by and through the acts complained of herein;

f.      Kony has violated § 43(a) of the Federal Trademark Act, 15 U.S.C. § 1125(a) by and through the acts complained of herein;

g.      Kony has engaged in deceptive trade practices in violation of the MDTPA by and through the acts complained of herein;

h.      Kony has engaged in unfair competition under common law by and through the acts complained of herein; and

i.     The foregoing violations have been willful.

2.     The Court issue a permanent injunction restraining, enjoining, and prohibiting Defendants and their affiliates, parents, successors, assigns, officers, agents, representatives, servants, employees, attorneys and all persons acting for, with, by, through, under, or in active concert with them from:

a.     Using, disclosing, or otherwise exploiting Plaintiffs' trade secrets and confidential information;

b.     Using the trademark REGALO or any confusingly similar designation alone or in combination with other words, as a trademark, or otherwise to market, advertise, or identify Defendants' barrier gate products;

c.     Otherwise infringing Regalo's trademark REGALO;

d.     Doing any acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead consumers into the belief that barrier gate products made, sold, offered for sale, or distributed by Defendants are authorized, sponsored, licensed, endorsed, promoted or condoned by Plaintiffs, or are otherwise affiliated with or connected to Plaintiffs; and

e.     Doing any other act or thing calculated to, tending to, or likely to unfairly compete with Plaintiffs.

3.     Require Defendants to deliver up for destruction any and all materials embodying Plaintiffs' trade secret and confidential information.

4.     Require Defendants to deliver up for destruction their entire inventory of barrier gate products that have been derived from Plaintiffs' trade secrets and confidential

information, or that bear the trademark REGALO, and the books and records (including computerized or electronic records) related thereto.

5.    Direct Defendants to file with this Court and serve on Plaintiffs within thirty days after the service of an order and injunction, a report in writing and under oath, setting forth in detail the manner and form in which it has complied with the order and injunction.

6.    Award Plaintiffs such damages as they shall prove at trial against Defendants that are adequate to compensate Plaintiffs for Defendants' acts complained of herein as permitted by law.

7.    Award Plaintiffs disgorgement of Defendants' profits by which Defendants have been unjustly enriched because of their unlawful actions as permitted by law.

8.    Award Plaintiffs enhanced or exemplary damages as may be permitted by law.

9.    Award Plaintiffs their reasonable attorneys' fees and costs as may be permitted by law.

10.    Award Plaintiffs punitive damages as may be permitted by law.

11.    Award Plaintiffs pre-judgment, post-judgment, and other interest on all monetary damages, as permitted by law.

12.    Grant Plaintiffs such other and further relief as the Court may deem just and proper under the circumstances.

<u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs respectfully demand a trial by jury on all issues triable by jury.

**CAMERON LAW OFFICE CHARTERED**

Date:  October 10, 2025

/s/ J. Matthew Berner
J. Matthew Berner (#0293167)
5353 Gamble Drive, Suite 300
Minneapolis, Minnesota 55416
Telephone No. (612) 355-7427
Facsimile No. (612) 339-6787
matt@cameronlawoffice.com

and

Frederick A. Tecce
**ALTIMA ADVISORS/ATTORNEYS, LLC**
One Liberty Place – 55th Floor
1650 Market Street
Philadelphia, Pennsylvania 19103
Telephone No. (215) 268-7525
Facsimile No. (215) 268-7526
fred.tecce@altimaadvisors.com

**ATTORNEYS FOR PLAINTIFFS**